THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHAS. KOHLMAN & CO. (Now JOHNSON-BLAKE COMPANY, INC.), Respondent, *v.* WALTER W. LAW, JR., et al., Constituting the State Tax Commission, Appellants.

**Tax — franchise tax upon domestic corporation — incumbent upon petitioner for revision of tax to prove not only error but exact amount — when Appellate Division without power to remit case to Tax Commission for further hearing.**

1. Where, in obedience to article 9-A of the Tax Law (Cons. Laws, ch. 60) imposing a franchise tax upon domestic corporations, the relator filed its report with the State Tax Commission purporting to show the amount of its net income during a certain year but failed to fill in that part of the blank form of report calling for a statement of the proportion of its sales made without the State but confirmed or accepted by agents in New York, and thereafter, at a hearing, upon its petition, under section 218 of the Tax Law for revision of the tax assessed by the Commission upon the theory that all of the relator's sales had been accepted or confirmed within this State, it showed that of sales representing goods not located in New York about half had their origin in orders received by agents in other States, but still failed to state whether the orders so received were finally accepted by the agents or were confirmed and accepted at the home office in New York, the Appellate Division is without power, upon certiorari to review the decision of the Commission, to send the case back for further hearing to the end that the relator may be permitted to try to prove its case again. It was incumbent upon the relator, at the hearing upon its petition for revision, to prove not only error but its exact amount and if, upon the record, the Commission was unable, for lack of data essential to an intelligent revision, to resettle the account for taxes, it did not err in confirming the account and dismissing the application. If it did not err in that respect, the Appellate Division had no choice save to approve the confirmation.

2. The question remains open whether power to remit to the Commission exists if it appears that the Commission in stating the account proceeded upon a principle or theory fundamentally erroneous though the court is without the data that enable it to substitute the right amount for the wrong one. (*People ex rel. Town of Hempstead* v. *State Board of Tax Comrs.*, 214 N. Y. 594, distinguished.)

*People ex rel. Kohlman & Co.* v. *Law*, 207 App. Div. 93; 208 App. Div. 602, reversed.

(Argued November 24, 1924; decided January 21, 1925.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 20, 1924, which annulled, on certiorari, a proceeding of the State Tax Commission and remitted the matter to the Commission for a new and further hearing on the merits.

The following question was certified: " Has the Appellate Division jurisdiction to remit this proceeding to the State Tax Commission for a second and further hearing? "

*Carl Sherman, Attorney-General* (*C. T. Dawes* of counsel), for appellants. The Tax Commission made no error of law; it neither misinterpreted the statute nor misapplied it on the facts as they appear in the record. The Appellate Division was without authority to direct the making of a new record. (*People ex rel. Town of Hempstead* v. *Tax Comrs.*, 214 N. Y. 594; *People ex rel. Burke* v. *Wills*, 107 App. Div. 15; 184 N. Y. 175; *People ex rel. M. E. R. R. Co.* v. *Knapp,* 191 App. Div. 132; *People ex rel. Roebling's Sons' Co.* v. *Wemple*, 138 N. Y. 582; *People ex rel. American A. & T. Co.* v. *Roberts*, 82 Hun, 313; 147 N. Y. 679; *People ex rel. Panama R. R. Co.* v. *Comrs. of Taxes*, 104 N. Y. 240; *People ex rel. B. El. R. Co.* v. *Roberts*, 90 Hun, 537; *People ex rel. Osgood* v. *Comm.*, 99 N. Y. 154.)

*Harrison Clark* and *John B. Doyle* for respondent. The power to remit cannot be questioned. (*People ex rel. Town of Hempstead* v. *Tax Comm.*, 214 N. Y. 594.)

CARDOZO, J. The relator, a domestic corporation, is in the business of the sale of cotton. On July 1, 1920, it filed a report with the State Tax Commission which showed or purported to show the amount of its net income during the year ending December 31, 1919. This report was made in obedience to article 9A of the Tax Law (Consol. Laws, ch. 60) imposing upon domestic corporations a franchise tax measured by the entire net income derived from business transacted within the State.

When the business of the corporation is transacted partly in New York and partly elsewhere, the statute prescribes rules for allocating the income between this State and others. Under the statute then in force (Tax Law, art. 9A, § 214, as amended by L. 1920, ch. 640), there were certain conditions in which a purchase or sale was to be allocated to New York though made without the State. This was so in the case of the purchase or sale of merchandise not located at any place at which the corporation conducted a permanent or continuous business without the State if " the bills and accounts receivable arose from orders received or accepted by any officer or agent, or at any place of business, in this State " (Tax Law, § 214). In other words, orders placed by selling agents in other States, but transmitted for confirmation here, and here accepted, would be reckoned as part of the business transacted in New York. The relator's report to the Commission fixed the average monthly value of bills and accounts receivable arising from the purchase or sale of personal property wherever made at $515,580.68, and the average monthly value of the bills and accounts receivable arising from the purchase or sale of personal property located in New York at $103,116.13. The difference, $412,464.55, represented the sale of property located elsewhere. The blank form of report prepared by the Commission called for a statement of the proportion of such sales confirmed or accepted by agents in New York. This part of the report the relator did not fill in, but left the answer blank. The Commission thereupon assessed the tax upon the theory that in this State all the relator's sales, irrespective of the location of the property, had been accepted or confirmed. Whether the members of the Commission had sources of information, or pursued inquiries, outside of the report, the record does not show. They are presumed to have been diligent in the fulfillment of their duty, and the assessment which they laid is

1925.]            Opinion, per CARDOZO, J.    .    [239 N. Y. 346]

at least presumptively correct. They might find in the
very nature of the business confirmation of their holding
that contracts were concluded at the home office and not
elsewhere. Less than twenty per cent of the goods sold
by the relator are manufactured or held by it when its
contracts to sell are made. It sends out its agents to
procure orders, and then when the contracts have been
perfected, procures the goods in the " gray " or uncolored
condition and has them sent from the mills at which it
buys them to bleacheries in other States to be colored
for its account. The course of dealing suggests the
need and hence the probability of central supervision
and unified control.

Following this action by the Board, the relator filed
a petition under section 218 of the Tax Law for the
revision of the tax. At the hearing it showed that of
the $412,000 of sales representing goods not located in
New York, about half had their origin in orders received
by agents in other States. It still failed to state, however,
whether the orders so received were finally accepted by
the agents, or were confirmed and accepted at the home
office in New York. All that we find on that subject
is the following: " Those goods were sold on a price list
supplied by your company from New York, or subjeect
to your approval at New York? Yes." Standing alone,
this might mean that some of the orders, i. e., those sold
pursuant to a price list, were accepted by the salesmen
without the need of confirmation. Even this becomes
doubtful when we read a question and answer that
followed a moment later: " Those orders were all sub-
mitted to New York after being sold upon a price list
already approved from New York? Yes." To this we
are to add a statement that contracts of purchase and
sale were generally signed in New York and not elsewhere.
If, however, we should assume in favor of the relator
that the indefinite question and answer first quoted give
support to the conclusion that some orders were accepted

**350**   People ex rel. Kohlman & Co. *v.* Law.

[239 N. Y. 346]      Opinion, per Cardozo, J.                    [Jan.,

in other States, they surely do not show how much. The Tax Commission with this information before it and no more would have found it impossible to fix the amount of the sales improperly charged against the relator as part of the business in this State. So also, if the tax had been paid (as under the statute it might have been), the Commission would have been unable to state the amount to be refunded. The relator had proved part of its case for a revision of the assessment. It had not proved the whole.

The Appellate Division, conceding all this, has sent the case back to the Commission to the end that the relator may be permitted to try again. We find no basis in the statute for the award of such relief. Section 218 of the Tax Law allows the filing of an application for revision within one year after the audit and statement of the account, and provides that if it shall be made to appear that payment has been illegally exacted, the account shall be resettled according to law and the facts. Section 219 authorizes the review of the determination of the Commission upon certiorari in the manner prescribed by section 199 of the same act. Section 199 is to the effect that if the original or resettled accounts shall be found erroneous or illegal either in point of law or of fact, the accounts reviewed shall be corrected and restated by the court. We have held where the proceeding for revision comes before a court that the taxpayer must prove not merely error but its exact amount. " It was incumbent upon the relator to distinctly point out any error committed by the assessors, and if part of the bills receivable were not subject to taxation, it should have shown what the amount of that part was " (per Cullen, Ch. J., in *People ex rel. Burke* v. *Wells*, 184 N. Y. 275, 280). The same rule must govern here, unless there is a distinction between an application for revision brought on before a court and a like application brought on before a taxing board. The relator's position seems

to be that such a distinction should be drawn. In that view, it becomes the duty of the Board, as soon as error in some degree is shown, to proceed to an assessment *de novo*, and prosecute of its own motion the inquiries essential to an ascertainment of the reduction to be made. We think this is a false construction of the function of the Board and of the meaning of the statute. Applications for revision may be made as late as a year after the assessment of the tax, and long after it has been paid (cf. Tax Law, § 200). The Legislature can hardly have meant that the Board should be compelled to order a refund of a tax already paid though the taxpayer had omitted to supply it with the necessary data to determine the sum to be refunded. For all that now appears, the sales accepted elsewhere represent an inconsiderable or even nominal proportion of the total. In the absence of evidence fixing with reasonable certainty the quantum of the error, the Board should not be required to roam about in search for information impeaching its own action. The assessment stands as ordered till the taxpayer has shown to what extent it is excessive.

If upon this record the Commission was unable, for lack of data essential to an intelligent revision, to resettle the account for taxes, it did not err in confirming the account and dismissing the application. If it did not err in confirming the account, the Appellate Division had no choice save to approve the confirmation. Either there was error in the disposition by the taxing officers of the application for revision or there was not. If there was error, the amount of the account as it should be resettled must appear from the record, unless indeed we take the view that the relator sustains its burden by showing that something was improperly included, without showing how much. If there was no error, the statute does not vest the court with the power to approve and at the same time to reverse. There must be some finality in the determination of the revenues of the State. If

taxpayers who have failed to take advantage of a first chance are to be given the benefit of a second, it is from the Legislature rather than from the courts that the privilege must come.

In thus holding, we do not say that there can never arise a situation in which the Appellate Division will have power to remit to the Commission. We leave the question open whether power to remit exists if it appears that the Commission in stating the account has proceeded upon a principle or theory fundamentally erroneous though the court is without the data that enable it to substitute the right assessment for the wrong one. Even if such data are at hand, with the result that the court is in a position under section 199 of the Tax Law to state the account itself, it may not be bound to do so, or so at least we shall assume, but in the exercise of discretion may order a new hearing instead of giving judgment absolute. In this proceeding, however, we have neither the data essential for restatement nor fundamental error of principle serving without more to vitiate the account as stated. There is nothing to show that the Commission misconceived the principle that should govern allocation or consciously applied some other principle, though by reason of incomplete knowledge of the facts it may have reached a wrong result. The validity of the relator's position may be tested by its consequences. Without greatly varying the facts before us, its witness might have said: "There were two or three small sales concluded by salesmen in other States without report to the home office." To the extent of such sales, the assessment would be wrong, but surely the conclusion would not stand that the assessment had been so vitiated by the application of a false principle as to be subject to annulment without other evidence of values. We think the case supposed does not differ in essentials from the case at hand. The relator had invitation and opportunity when it made its report to

distinguish between sales concluded here and sales concluded elsewhere. It was silent then. It had a like opportunity on the application for revision. Again it was silent, contenting itself with the uncertain statement that some sales had been made in accordance with a price list. It now says that it should have a third opportunity to supply the information which it has twice withheld. The very fact that the blank report prepared by the Commission asked that such information be furnished by the taxpayer, shows that the Commission was not proceeding upon any misconception of the principle that should govern the assessment. We find no evidence of error that is fundamental and pervasive.

The relator relies upon *People ex rel. Town of Hempstead* v. *State Board of Tax Commrs.* (214 N. Y. 594). It has no bearing on the case before us. There the board of supervisors had determined the values of property in the several towns within their county. One of the towns appealed to the State Tax Commission to equalize the assessments. The Commission made a readjustment which the Appellate Division held to be against the weight of the evidence (Code Civ. Pro. §§ 2140, 2414). Upon appeal to this court, the ruling was that the matter should be remitted to the Commission to reach a new determination. The relator in that proceeding had not failed, as did this relator, to present the necessary proofs. It had presented them, but they had been disregarded, and an erroneous adjustment made. The case is no authority for a new hearing in aid of a relator who complains but does not prove.

The order should be reversed, with costs in the Appellate Division and in this court, and the question certified answered in the negative.

HISCOCK, Ch. J., POUND, MCLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; CRANE, J., absent.

Order reversed, etc.