THE PEOPLE OF THE STATE OF NEW YORK ex rel. AMERICAN WOOLEN PRODUCTS COMPANY, INC., Relator, *v.* STATE TAX COMMISSION, Respondent.

Third Department, July 1, 1925.

Taxation — franchise tax based on net income — relator is selling corporation, subsidiary to foreign manufacturing corporation — relator did not sell in United States — orders were taken in South America and Canada — if relator was satisfied with credit of prospective purchaser and parent corporation could fill order, agent was notified — agent then confirmed sale in writing and signed relator's name — no orders received or accepted by any officer or agent, or at any place of business, in this State, within Tax Law, § 214 — matter remitted to readjust tax on business done in New York.

No orders were received or accepted by any officer or agent of the relator or at any place of business in this State subjecting the relator to a franchise tax based on net income under section 214 of the Tax Law, since it appears that the relator is a selling corporation subsidiary to a foreign manufacturing corporation; that it was not authorized by the parent corporation to sell the goods within the United States; that orders were taken by its agents in South America and Canada and the relator notified; that if the relator was satisfied with the credit of the prospective purchaser and the parent corporation could fill the order, the relator notified the agent taking the order and he confirmed the sale on a blank furnished by the relator, signed the agreement in behalf of the relator and caused it to be signed by the customer and then forwarded the confirmed order to the relator in New York.

In order to make the sale come within the provisions of section 214 it was not sufficient for the relator to announce that it would accept an order but the

494 PEOPLE EX REL. AM. W. P. CO., INC., *v.* STATE TAX COMM.

Third Department, July, 1925.                                    [Vol. 213

acceptance thereof should have been made directly between the relator and the customer.

The matter is remitted to the State Tax Commission to readjust the tax on business concededly done within the State of New York.

CERTIORARI issued out of the Supreme Court (after taking effect of the Civil Practice Act) and attested on the 5th day of September, 1922, directed to the State Tax Commission, commanding it to certify and return to the office of the clerk of the county of Albany all and singular its proceedings had in assessing an annual franchise tax against the relator based on its business for the year ending December 31, 1919, under article 9-A of the Tax Law, section 214. (See Tax Law, art. 9-A, § 214, added by Laws of 1917, chap. 726, as amd. by Laws of 1919, chap. 628, and Laws of 1920, chap. 640. Since amd. by Laws of 1921, chap. 705; Laws of 1922, chap. 507, and Laws of 1925, chap. 323.)

*Olney & Comstock* [*Harold T. Edwards* of counsel], for the relator.

*Albert Ottinger, Attorney-General* [*Wendell P. Brown* and *C. T. Dawes, Deputies Attorney-General,* of counsel], for the respondent.

COCHRANE, P. J.:

The relator was a Massachusetts corporation authorized to do business in this State. It was a subsidiary of the American Woolen Company, also a Massachusetts corporation, and was the export selling agent of that corporation. It maintained an office in the city of New York where numerous clerks, bookkeepers and stenographers were employed.

The Tax Commission takes the position that under section 214 of the Tax Law the relator was required to allocate to this State " the average monthly value of bills and accounts receivable arising from * * * (c) the purchase or sale of, or trading in, goods, wares or merchandise not located at any place at which the corporation conducted a permanent or continuous business without the State, and where the bills and accounts receivable arose from orders received or accepted by any officer or agent, or at any place of business, in this State."

Assuming that the merchandise sold was not located at any place where the relator conducted business without the State the real question then is whether under the statute quoted any " bills and accounts receivable arose from orders received or accepted by any officer or agent, or at any place of business, in this State."

The relator was prohibited by its parent corporation from selling goods within the United States. It had during the year in question six traveling salesmen soliciting business in South America and Canada. The method of transacting business is described by the

Attorney-General in his brief as follows: " Upon receiving an order, the salesman would transmit the same to the New York office by cable. An officer of the relator located at the New York office would investigate the credit standing of the customer. The officer would then communicate with Mr. Knight, the selling agent of the parent corporation in Boston, to ascertain if the goods could be obtained. If the goods could be obtained and the credit of the customer was satisfactory, the officer in New York would confirm the sale by cable to the agent in the foreign country. The agent in the foreign country would thereupon fill out a confirmation of the sale on a blank furnished by the relator, sign it in behalf of the relator, cause it to be signed by the customer and forward the same to the relator in New York. All of the sales were conducted in the same manner. Every one of the agents reported to the relator at the New York office. All of the business which they did was done through the New York office and all that they did was to submit questions and orders to the New York office by cable or mail."

It seems clear from the foregoing statement that there were no " orders received or accepted by any officer or agent, or at any place of business, in this State." The orders were taken by the agent in a foreign country. They were accepted by the agent in the foreign country. A typical form of the consummated contract is in evidence showing that there was no completed contract or binding obligation on either party until such consummation occurred in the foreign country. What took place between the agent and the New York office was merely preliminary to a determination as to whether the orders would be accepted. Until the final consummation between the customer and the agent in the foreign country neither party was bound. The announcement from the New York office to the agent that the order would be accepted did not constitute an acceptance as between the relator and the customer. What the statute means is an acceptance directed to the customer and binding on the relator. As to this foreign business, therefore, we think the relator was not taxable.

It appears further that independently of its relations to its parent corporation the relator sold during the year in question to its foreign customers certain commodities which it purchased in the market in New York city and caused to be shipped to the customers. The amount of these sales is conceded to have been $42,123.61. As to this business the relator admits its liability to taxation. The Attorney-General contends as to this feature of the case that the relator did not establish the average monthly value of its bills and accounts receivable and make the proper allocation

thereof to this State as required by said section 214 and that, therefore, if there is error in the total amount of the tax as assessed the relator has failed to show to what extent it should be reduced. Undoubtedly the burden is on the relator of showing not only error but the extent of the error. But the total amount of this business subject to taxation appears. It would seem that the bills and accounts receivable would not exceed the amount of the sales. It may be that the data before the Tax Commission were. not sufficiently complete to enable the tax to be fixed with exact nicety or accuracy in favor of the relator but it is certain that a maximum amount may be fixed with entire justice to the State and will be very much less than the assessment as made. The Commission should make use of the data before it in readjusting the tax. The case of *People ex rel. Kohlman & Co.* v. *Law* (239 N. Y. 346, 352) does not limit our discretion to remit the proceeding to the Commission when it has at hand data whereby it may readjust the tax.

The determination should be annulled and the proceeding remitted to the State Tax Commission, with fifty dollars costs and disbursements.

All concur.

Determination annulled and proceeding remitted to the State Tax Commission, with fifty dollars costs and disbursements.