THE PEOPLE OF THE STATE OF NEW YORK ex rel. BECK HAZZARD, INC., and Subsidiary Companies, Relator, *v.* JOHN F. GILCHRIST and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, May 4, 1927.

Taxation — franchise tax on business corporation under Tax Law, art. 9-A — State Tax Commission on theory that salaries deducted constituted in part diversion of income reduced amount deducted by $42,000 — burden is on relator to show error on part of State Tax Commission — relator failed to show error.

This is a proceeding to review the action of the State Tax Commission in reducing the amount paid by the relator as salaries to its officers and thereby increasing the taxable net income. It appears that the relator owns and operates a chain of shoe stores and reported a taxable net income of $552,277.70 for the year 1922, and in arriving at that income deducted as salaries for three officers, $182,646.17. The money paid the officers was made up of a salary of $2,500 per year and a percentage of the income of the corporation. A comparison with salaries paid to a corporation engaged in the same line of business shows that the salaries paid to the officers of the relator were high.

The State Tax Commission has the power to determine whether or not money paid as salaries to officers constitutes a diversion of the profits and thereby a reduction of the taxable net income. In case the corporation feels aggrieved it has the burden to show that error was made by the State Tax Commission and to establish the amount of that error; the Commission is not called upon to justify its assessment.

The relator failed to show that the action of the State Tax Commission in reducing the amount deducted from the income as salaries by $42,000 was erroneous. Furthermore, under the evidence the State Tax Commission was justified in finding that the total amount of salaries paid to the three officers was excessive.

CERTIORARI issued out of the Supreme Court and attested on the 13th day of February, 1926, directed to John F. Gilchrist and others, constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in denying an application for a revision and readjustment of taxes assessed against the relator under article 9-A of the Tax Law, for the year beginning November 1, 1923.

*Perlie P. Fallon,* for the relator.

*Albert Ottinger, Attorney-General [Wendell P. Brown* and *Claude T. Dawes, Deputies Attorney-General,* of counsel], for the respondents.

VAN KIRK, Acting P. J. The relator is a domestic corporation with a capital stock of the par value of $1,000,000. It owns the stock of forty-eight subsidiary domestic corporations. During the year 1922 these corporations owned and conducted about sixty retail stores selling men's and women's shoes. The principal place of business of the parent corporation is in New York city. The stores are located in New York and other States. The tax in question is the franchise tax on business corporations. It is to be computed upon the net income for the year next preceding that for which the tax is to be levied, " which entire net income is presumably the same as the entire net income upon which such corporation is required to pay a tax to the United States." (Tax Law, art. 9-A, § 209, added by Laws of 1917, chap. 726, as amd. by Laws of 1920, chap. 640.*) Within the required time the parent company filed a consolidated Federal tax return for itself and the subsidiary companies, which showed a net income of $552,277.70 for the year 1922. This return showed that, in calculating the net income, salaries in the sum of $182,646.17 were allowed to the three executive officers — the president, vice-president, and secretary and treasurer of the parent company. The State Tax Commission reduced this amount for salaries by the sum of $42,000, thus increasing the net income by that amount and in consequence increasing the tax. It is this deduction of the $42,000 item alone which is complained of.

It was claimed in this proceeding that in fact the salaries paid during the year 1922 to these officers aggregated $177,646.17 and there is some confusion in the calculations in this respect. However, if that be the fact, the result is not changed. The deduction would be considered as $37,000, rather than $42,000, and the net income would be $5,000 larger than is shown in the return.

The stock of the parent corporation is closely held and the control is in the president and vice-president. President Hazzard held 2,833⅓ shares; the R. P. Hazzard Company 2,866⅔ shares; Dunn & McCarthy 2,133⅓ shares; the total number of shares being 10,000. The remaining shares were held in smaller amounts by three individuals.

The president, R. P. Hazzard, owned a controlling interest in the R. P. Hazzard Company, a corporation manufacturing the

---

* Since amd. by Laws of 1924, chap. 329, and Laws of 1927, chap. 479.—[REP.

men's shoes which are sold through relator's stores. It is a Maine corporation, with its manufacturing plant in that State. Mr. Hazzard lives in Maine and divides his time and service between the relator and the R. P. Hazzard Company. He spends one day a week in New York city. The greater part of the time he spends in Maine. He testifies that he has supervision of the entire business of the relator; that he receives daily reports, weekly reports and monthly reports regularly from the subsidiary companies. It does not appear what his salary is in the R. P. Hazzard Company, but he received in 1922, according to the Federal return, from the relator $57,805.73. This is made up of the following items: Salary, $2,500; bonus, five per cent upon the income of the corporation, and $250 for each store.

The vice-president, Mr. Emerson, received a sum identical in amount and calculated in the same manner. He, during the year 1922, had a very large interest in Dunn & McCarthy and, at least at the time of the hearing herein, had the controlling interest. Dunn & McCarthy is a domestic corporation which manufactures at Auburn, N. Y., the women's shoes sold through these retail stores. Mr. Emerson divided his time between the business of the parent company and that of Dunn & McCarthy. He received a salary of $50,000 a year from Dunn & McCarthy. He lived in Auburn and spent practically the same time in New York city as did President Hazzard; presumably the two met there for conference concerning business affairs.

The secretary and treasurer, Mr. Brown, received a salary of $2,500 per year and a bonus at the rate of ten per cent, amounting in the aggregate to $67,034.71. It does not appear that he is interested in any other business. He lives on Long Island.

The relator has shown that the bonus to each of the officers was fixed by contract at the beginning of each year; these contracts being evidenced by resolutions of the board of directors. It put in evidence a bulletin of a " Bureau of Business Research," showing the operating expenses of retail stores, to establish that the salaries paid to the three executive officers of the relator were not excessive and were in fact at a lower rate than those of retail stores generally. The matters intended for comparison set forth in the bulletin were not, however, well established. Also there was testimony by President Hazzard as to the value of the services of the officers; his was the only oral testimony taken. The Tax Commission introduced the annual report of a corporation, the name of which is not disclosed, but is called " Company A." This company was engaged in a similar business and was a competitor of relator. By a comparison of the capital stock, assets, gross

sales, net income and the salaries of the executive officers, it appeared that the relator's executive officers were being considerably higher paid, relatively, than were those of Company A. The net income of relator was about $552,000, and of Company A $352,000; while the salaries of the three executive officers of relator were above $182,000, and that of the three executive officers of Company A were $53,100.

In fixing the true and correct amount of the net income, on which the amount of the tax is to be calculated, the Tax Commission may use the Federal income tax return and any other information which it may have. (*People ex rel. Barcalo Mfg. Co.* v. *Knapp,* 227 N. Y. 64, 71.) It is presumed that its assessment is correct. (*People ex rel. Kohlman & Co.* v. *Law,* 239 N. Y. 346.) The burden is upon the relator to show that error was made by the Commission and the amount of the error. The Commission is not called upon to justify its assessment. (*Matter of Lorimier, Greenbaum Co., Inc.,* v. *Gilchrist,* 212 App. Div. 733.)

The real question is whether there has been a diversion of the profits of relator under the guise of salary, thereby avoiding or reducing the amount of the tax. In determining the net income of a corporation, one of the deductions which may be made from gross income under the Federal Income Tax Law as contained in the Revenue Act of 1921 (42 U. S. Stat. at Large, 254, § 234),* is " a reasonable allowance for salaries or other compensation for personal services actually rendered." The Tax Commission has the right to investigate and determine whether the salaries paid to officers of the corporation are a reasonable allowance for the services rendered. (*People ex rel. Jaeckel & Sons* v. *Gilchrist,* 209 App. Div. 120, and cases cited.) In our view the relator has failed to show any error on the part of the Tax Commission in determining the net income; the Tax Commission was justified in finding that the total amount of the salaries paid the three executive officers was excessive.

The determination should be affirmed, with fifty dollars costs and disbursements.

HINMAN, McCANN, DAVIS and WHITMYER, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.

---

* Since revised by Revenue Act of 1924 (43 U. S. Stat. at Large, 283), § 234, and Revenue Act of 1926 (44 id. 41), § 234.—[REP.