THE PEOPLE OF THE STATE OF NEW YORK ex rel. INTERNATIONAL SALT COMPANY, INC., Relator, *v.* MARK GRAVES and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, July 6, 1934.

*Putney, Twombly & Hall [Henry B. Twombly of counsel], for the relator.*

*John J. Bennett, Jr., Attorney-General [Wendell P. Brown, Assistant Attorney-General, of counsel], for the respondents.*

BLISS, J. Relator is a business corporation. Upon its predecessor's reports for the fiscal years ending February 28, 1918, and February 28, 1919, the Tax Commission audited and stated the accounts and assessed the franchise taxes against it under article 9-A of the Tax Law. In so doing it segregated percentages of the assets upon which the assessments were based at 91.0947 per centum and 90.5415 per centum respectively. In determining such percentages it applied the then statutory provision that the proportion of the average value of the stocks of other corporations owned by the corporation, allocated to the State, must not exceed ten per cent of the value of the real and tangible personal property segregated to the State. (Tax Law, § 214, as amd. by Laws of 1918, chap. 417.) No application for a revision under section 218 of the Tax Law was made to the Commission nor was a review of the determination had by certiorari. This statutory ten per cent limitation was held unconstitutional in the year 1920 by the Court of Appeals in *People ex rel. Alpha Portland Cement Co.* v. *Knapp* (230 N. Y. 48). On August 12, 1932, petitioner made return under section 219-d of the Tax Law to the Commission showing that the net income for such years had been changed by the United States Commissioner of Internal Revenue and gave the corrected incomes, together with the original and new statements of the assets specified in section 214 to be used as elements in the statutory formula for determining the percentage of net income taxable. It asked for a reaudit of both the net income and the original segregations of assets allocated to the State and assigned two reasons why this should be done. It set forth, *first*, that on the original segregations the unconstitutional ten per cent limitation was applied to its disadvantage and, in the *second* place, that an error had been made by it in its original reports in giving the value of stocks of other corporations at cost rather than at actual value. The Tax Commission reaudited and restated the accounts of the corporation for these years by accepting the net incomes as corrected by the Federal authorities and applying to them the segregations of assets upon which the original assessments were based. A review of such determination was granted

by the Commissioner on which the determination was affirmed. The Commission held that it was powerless to change the original segregations because of the present provisions of section 219-d of the law to the effect that the reaudit must be made " without change of the segregation of assets upon which the original assessment was based " (Laws of 1922, chap. 507), and that " This section, as hereby amended shall be construed as having been in effect as of the date of the original enactment of Article 9-a of the Tax Law as added by chapter 726 of the Laws of 1917." (Laws of 1929, chap. 183.)

A similar situation is shown to exist with relation to the taxes assessed against the corporation for the fiscal year ending February 28, 1917, the ten months' period ending December 31, 1919, and each of the calendar years from 1920 to 1927, both inclusive, with the exception that the use of the unconstitutional statutory ten per cent limitation is not involved. The complaint as to these latter tax periods is one of illegality in that stocks of other corporations owned by relator were valued at book instead of actual values. Also, with relation to the 1917 tax there are the claims that the statutory prohibition against reopening the original segregation does not apply and that the amendment to section 219-d by the Laws of 1929, chapter 183, is unconstitutional because it is retroactive.

The relator, upon its reports of corrected net income and applications for revision, furnished the Commissioner with all the data essential to resettlements based upon new segregations of assets. It showed the correct percentages of allocation to the State, the amounts of error and the correct taxes. It did not, however, seek revisions when the segregations were originally made and any errors in the values of the stocks of other corporations resulted from relator's own failures to report on the basis of actual value instead of a book value. As to the assessments of taxes for the tax periods ending February 28, 1917, December 31, 1919, and December thirty-first of each year thereafter to and including December 31, 1927, these errors resulting from the petitioner's failure to correctly report the value of stocks of other corporations owned by it, may not now be corrected. The taxpayer did not exhaust its remedies under the statute. It might have, within one year, had a reaudit and restatement (Tax Law, § 218), but it failed to do so. Its failures to make correct reports were the causes of the alleged errors. It has waived its right to revision by its erroneous reports and failure to seek revision within the time allowed by statute. (*People ex rel. Kohlman & Co.* v. *Law*, 239 N. Y. 346.) There is also the added reason that there is no statutory

authority for the revision now demanded. The taxpayer has only such rights of revision after the original audit and statement of the account and assessment of the tax as the statute gives to it. The statutory remedy in effect at the time the correction is sought must control. Section 219-d authorizes a correction as to net income only and not as to segregation. The question of the constitutionality of the 1929 amendment to this section to the effect that it shall be construed as having been in effect as of the date of the original enactment of article 9-A of the Tax Law in 1917 is not here involved as the determination of the Tax Commission with respect to the tax periods ending prior to the year 1922 may be sustained upon authority other than this alleged unconstitutional provision and irrespective of it.

The same analogy may not be applied to the reaudits and restatements for the fiscal years ending February 28, 1918, and February 28, 1919. As to those years, the Commissioner has again applied segregation percentages, one of the elements of which was the unconstitutional limitation. A segregation made in accordance with an unconstitutional statute is no segregation. It was void *ab initio* and the taxpayer's failure to seek its revision does not constitute a waiver. Nor does the law's attempt to continue it in force give it any life. The law-making power cannot, by statute, breathe life into an unconstitutional determination of an administrative board. (*People ex rel. Barnard* v. *Wemple,* 117 N. Y. 77, 85.) The Tax Commission has here proceeded upon a principle fundamentally erroneous. The record contains the data that enable the court to determine the correct assessments and it may, therefore, do so. (*People ex rel. Kohlman & Co.* v. *Law, supra;* Tax Law, § 199.)

The determination should be modified and the matter remitted to the State Tax Commission to proceed in accordance with this opinion.

HILL, P. J., McNAMEE and HEFFERNAN, JJ., concur; RHODES, J., dissents and votes to confirm the determination.

Determination annulled, with fifty dollars costs and disbursements, and matter remitted to the State Tax Commission to proceed in accordance with opinion.