In the Matter of J. C. BRADFORD & Co. et al., Petitioners, v STATE TAX COMMISSION, Respondent.

Third Department, April 13, 1978

## APPEARANCES OF COUNSEL

*Everett, Johnson & Breckinridge (Eugene Chester* and *Peter K. Lathrop* of counsel), for petitioners.

*Louis J. Lefkowitz, Attorney-General (Francis V. Dow* and *Ruth Kessler Toch* of counsel), for respondent.

## OPINION OF THE COURT

LARKIN, J.

Article 9-A of the Tax Law imposes an annual franchise tax upon domestic and foreign corporations for the taxpayer's fiscal or calendar year, or any part thereof, measured by the taxpayer's entire net income or capital or by one of the other bases prescribed in the statute. The tax is not a direct tax on income, but a tax for the privilege of doing business in New York. Parallel to this, article 23 (§ 701 *et seq.)* of the Tax law imposes a tax on the income of every unincorporated business wholly or partly carried on in the State. We are here concerned with the taxable years 1964 through 1970. The stated legislative purpose of the unincorporated business tax "was to bring unincorporated business enterprises * * * into a tax scheme by which taxes were imposed upon similar businesses conducted * * * by corporations * * * and to make such unincorporated businesses share their just proportionate burden of taxation" *(Matter of Thompson v Mealey,* 290 NY 230, 234; *People ex rel. Tower v State Tax Comm.,* 282 NY 407).

Petitioner is an unincorporated business partnership, organized in Tennessee with its main office in Nashville, engaging in the securities business as a broker and dealer. During the years in issue, petitioner was a member of both the New York and American Stock Exchanges with a sales and operations office located in New York. Hence, it was and is subject to the New York unincorporated business tax. The New York office was not involved in any fiscal, administrative or management functions as these were centralized in the Nashville head office. As part of its business as a securities broker and dealer, petitioner engaged in three forms of business activity which are herein at issue: trading of listed stocks on New York exchanges; trading of unlisted stocks referred to as "over-the-counter"; and the earning of "primary profit" through partici-

pation in underwriting syndicates managed by a syndicate manager located in New York.

The instant matter arises as a consequence of New York partnership and unincorporated business income tax returns which were filed by the petitioner for the years 1964 through 1970. Petitioner utilized the three-factor formula method (Tax Law, § 707, subd [c]) to apportion the amount of its income attributable to New York. On October 12, 1972, the Income Tax Bureau of the Department of Taxation and Finance issued a statement of audit changes and notice of deficiency against the petitioner in the amount of $227,466.42 inclusive of interest. The bureau utilized what it referred to as the "office-to-office" accounting method, herein referred to as the "direct accounting method" (Tax Law, § 707, subd [c]), in computing this tax deficiency.

The bureau determined that 40% of all commissions from listed stock transactions were allocable to New York if the transaction was executed in New York and the other 60% were allocable to New York if the order also originated in New York. This allocation was made pursuant to regulations of the State Tax Commission (20 NYCRR 263.7, 287.1; now replaced by 20 NYCRR 207.5 [c]). Commission income from over-the-counter stock transactions was allocated on the basis that 50% of all such transactions were attributable to New York where New York was either the place of origination or the place of execution. Primary profit from underwriting operations, which is risk income as distinguished from secondary profit which is earned upon the retail sale of underwritten securities, was allocated by the bureau on the basis that 100% of all such profits were taxable in New York when the manager of the underwriting syndicate had its principal office in New York.

The determination of the tax bureau was upheld by the State Tax Commission, after the correction of two computational errors, by decision dated February 1, 1977. Petitioner seeks review of this determination pursuant to CPLR article 78.

The taxation of multi-State unincorporated businesses is governed by section 707 of the Tax Law. Two methods of computing New York tax liability are specifically provided: (1) allocation from the books of the business, known as the "direct accounting method" (Tax Law, § 707, subd [b]); and (2) allocation by a formula consisting of property percentage,

payroll percentage, and gross income percentage allocable to New York times total net income, known as the "three-factor method" (Tax Law, § 707, subd [c]). Additional methods may be utilized by the tax bureau if promulgated as rules and regulations (Tax Law, § 707, subd [d]). Direct accounting is to be used unless a fair and equitable apportionment cannot be determined by that means (*Matter of Piper, Jaffray & Hopwood v State Tax Comm.*, 42 AD2d 381; 20 NYCRR 263.7).

Petitioner urges that the tax determination herein should be annulled because the tax commission utilized the direct accounting method and refused to allow the petitioner to use the alternate three-factor method. Petitioner argues that its books do not fully and equitably reflect its New York earnings and thus the direct method is inappropriate; that the centralization in Tennessee of control of the partnership, together with its fiscally interdependent branches in many different States, mandates the use of the three-factor method of allocating income; and the very nature of petitioner's business gives it a unitary and indivisible character so that its total income cannot be "fairly and equitably" allocated by the direct accounting method.

The fact that the taxpayer's books may not accurately reflect its New York taxable income is, by itself, unpersuasive. The tax commission is not narrowly limited to the taxpayer's books in auditing and determining tax liability by the direct accounting method (20 NYCRR 263.7; *People ex rel. Kohlman & Co. v Law,* 239 NY 346). Although it is true that petitioner's business is located in many States, and that the functions and expenses of management and administration are located in Tennessee, these facts alone would not preclude the direct accounting method from providing the basis for a fair and equitable allocation of income (*Matter of Federated Dept. Stores v Gerosa,* 16 NY2d 320, app dsmd 385 US 454). Consistent with this position, the commission, on brief, states that the rationale for not permitting unincorporated securities dealers to use the three-factor formula is that "there is a wide variation in the methods of doing business and a general allocation formula would result in considerable inequity either to taxpayers or to the State in a particular case. Proposals to change this regulation of the Tax Commission to permit the use of the three-factor formula by securities dealers have been consistently rejected by the respondent." Nevertheless, on January 1, 1978, prior to the argument before this court, the

tax commission voted to allow unincorporated brokerage houses (such as petitioner's) to utilize the three-factor formula. While this change is prospective in nature and hence does not apply to this case, it reflects a strong commission conclusion that their mandate to use the direct accounting method was arbitrary, or, at least, erroneous.

The very nature of the business of a multi-State partnership engaged in a variety of securities dealings creates serious doubts as to the correctness of the direct accounting method as mandated by the commission. The underwriting and stock transfer business requires substantial correlation between the central office, the branch offices, the stock exchanges and its members. When a corporation wishes to obtain new debt or equity capital, it rarely sells its securities directly to the public. Instead, it sells the issue to the several members of an underwriting syndicate, who in turn attempt to sell it to the public through a selling group. The members of the selling group may or may not be members of the syndicate. An underwriter derives a profit or loss not by its purchase of its share of the securities from the issuer, but from the sale of such securities to the public. The primary profit or loss is the spread between the price paid by the underwriter to the issuer for the securities being marketed and the price received by the underwriter from the sale of the securities to the public, less the expenses of the underwriting, the manager's fee and the selling concession. Petitioner divides its projected total profit on an underwriting by the number of shares it has committed itself to sell and arrives at a hypothetical profit per share. Each office is given a credit equal to that hypothetical profit for each share sold by that office, even if petitioner incurs either a primary loss or an over-all loss on the underwriting.

The tax commission in the instant case determined that where an underwriting syndicate, of which petitioner was a member, was managed by an organization with principal offices in New York, 100% of the primary profit made by the petitioner from such underwriting was allocable to New York. The tax commission, using petitioner's 1967 statement which indicated that 27% of its underwriting profit was produced by New York based syndicates, determined that 100% of the 27% was taxable in New York. In the "over-the-counter" area, the commission, using the petitioner's 1967 figures that 20% of its over-the-counter trades were consummated in New York, de-

termined that 50% or ½ of the profit from the 20% over-the-counter business was taxable in New York.

■ ■ Although in the case of "primary profit" through participation in underwriting syndicates and in the trading of unlisted "over-the-counter" stocks some of the profit must have been due to the activity in New York, in our view the 100% and 50% allocations find no support in the record. They receive no support from the petitioner's books and records used in the direct accounting method required by the commission (Tax Law, § 707, subd [b]). There is a constitutional mandate that only that proportion of earnings fairly allocable to New York may be taxed by New York *(Hans Rees' Sons v North Carolina,* 283 US 123). These must be "fairly attributable" to in-State factors and must not work an unfair apportionment *(Gulf Oil Corp. v Joseph,* 307 NY 342, app dsmd 348 US 923).

■ The percentage allocations merely represent formulae applied to the figures obtained from petitioners' books and records. As such, they are at most conclusive presumptions unsupported by regulations of the commission and, therefore, not permitted by the statutory scheme (Tax Law, § 707, subds [b], [d]). In addition, there is strong evidence of their inaccuracy. The tax on 100% of the primary underwriting profit, where the syndicate is managed from New York, is manifestly unfair since it fails to recognize the out-of-State activities involved. Primary profit is not realized until the underwritten stocks are sold to a third party, which activity, in the instant case, for the most part occurs by sales in the out-of-State branch offices. Uncontradicted evidence exists that an over-the-counter trade is similar to that of a listed security except that less is involved since there is no exchange and no floor brokerage; yet, as to listed securities the commission has applied a much different 60-40 rule of apportionment (20 NYCRR 263.9, 287.1).

■ Petitioner argues that in addition to the arbitrary commission rules in regard to underwriting and trading of unlisted securities, the regulations in regard to allocation of income from the trading of listed securities are erroneous, arbitrary and capricious and may not be used in the direct accounting method because the 60-40 formula is not "from the books". Evidence submitted by petitioner on this point indicates that the amount allocable to New York is significantly less than 40%, lying more in the 25-30% range for the tax

years at issue. The fact that the tax commission has also, as of January 1, 1978, prospectively amended its regulations so as to change the 60-40 allocation to a 80-20 allocation only further undercuts the commission's claim that this conclusive presumption is valid. It is apparent that the use of the 60-40 rule in the instant case is the product of a past analysis of the source of these earnings, but that it is not presently, and was not for the tax years herein at issue, a method rationally related to the source of the income as it must be in order to be sustained upon this review *(Matter of Pell v Board of Educ., 34 NY2d 222)*.

On this record, we find that the said 100% underwriting rule and the said 50% over-the-counter rule are arbitrary formulae without evidentiary support. We make no determination whether petitioner's business is unitary and necessitates use of the three-factor formula since the record is not sufficient for that purpose. At the least, the commission on remand must review the use of the direct accounting method and, if such be the case, provide evidence to support its use and the use of any allocation rules. We also remit for redetermination of the 60-40 rule in view of petitioner's strong evidence and the lack of any support in the record for a 40% allocation during the tax years in question.

The determination should be annulled, without costs, and matter remitted for further proceedings not inconsistent herewith.

SWEENEY, J. P., KANE, STALEY, JR., and MIKOLL, JJ., concur.

Determination annulled, without costs, and matter remitted for further proceedings not inconsistent herewith.