■ In the Matter of GOODBODY & COMPANY, INC., Petitioner, v STATE TAX COMMISSION, Respondent.—Mikoll, J. Proceeding

pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review respondent's determination denying petitioner's application for a refund of unincorporated business tax and imposed under Tax Law former article 23.*

The parties herein have stipulated to most of the underlying facts in this tax matter. Petitioner is the successor in interest to Goodbody & Company (Goodbody), a New York partnership engaged in the securities business as a broker and dealer. A clearing firm, Goodbody maintained its main office in New York City but had branch offices in and out of the United States. It distributed its profits and losses according to the provisions of its limited partnership agreements. These provided, *inter alia,* that salary and interest paid to partners would generally be treated as expenses of the business of the partnership. When the expenses of the business exceeded its income, however, the deficit would be borne solely by the general partners according to their partnership interests.

Goodbody filed State unincorporated business tax returns for the years 1965 to 1969 reflecting the following amounts of taxable business income:

| Year | Taxable Business Income (Loss) | Tax Liability |
|------|-------------------------------|---------------|
| 1965 | $ 2,073,612.04 | $ 82,944.48 |
| 1966 | 1,908,894.43 | 76,355.78 |
| 1967 | 4,893,785.44 | 195,751.42 |
| 1968 | (1,776,961.20) | -0- |
| 1969 | (8,854,302.88) | -0- |

In the years 1965 to 1969, Goodbody earned commission income on securities orders originating outside the State but executed on exchanges within the State. It treated 40% of these commissions as New York income. Goodbody also received commission income on commodity and bond orders originating outside the State but executed within the State. It allocated 50% of this income to the State.

Goodbody, contending that it had sustained losses for the years 1968 and 1969, filed timely claims for refunds with net operating loss carry-backs to the years 1965, 1966 and 1967. Its claims for refunds rested on two grounds: first, that it had overpaid tax when it reported 40% and 50% of its commission income; and second, that it was entitled to loss carry-backs

---

* Tax Law former article 23, entitled "Unincorporated Business Income Tax", was repealed by Laws of 1978 (ch 69, § 7, eff Dec. 31, 1982).

under Tax Law former § 706 (2) (a), since its common partners in the deduction years (1965, 1966 and 1967) had more than an 80% interest in the partnership's unincorporated gross income and deductions during the loss years (1968 and 1969) *(see,* Tax Law former § 706 [2] [b]). In December 1970 and March 1974, the Audit Division of the Department of Taxation and Finance (the Department) conducted audits of Goodbody's business, revised its taxable income figure and assessed deficiencies for 1965, 1966 and 1968 as follows:

| Year | Revised Taxable Business Income (Loss) | Net Deficiency |
|------|----------------------------------------|----------------|
| 1965 | $ 2,819,816.38 | $ 29,848.17 |
| 1966 | 3,411,270.25 | 60,095.13 |
| 1968 | 5,068.00 | 279.00 |

Petitioner consented to each of the above deficiencies. No payments were made by petitioner of these deficiencies and warrants were not issued by respondent to collect the unpaid taxes within a six-year period.

On October 26, 1976, the Department rejected Goodbody's claims for refunds for the years 1965, 1966 and 1967. Goodbody filed petitions for redetermination and for refunds with respondent on October 5, 1978. In its answer, dated June 28, 1979, the Department explained that Goodbody's claims for refunds were denied, first, because the audit had disclosed and Goodbody had consented that 1968 was not a loss year, and second, because Goodbody failed to meet the 80% requirement in Tax Law former § 706 (2) (b) and 20 NYCRR 206.3 (c). While Goodbody asserted that its common partners in 1966 had in the aggregate an 85.06% interest in the partnership's unincorporated business gross income and unincorporated business deductions in 1969, and that its common partners in 1967 had in the aggregate a 92.46% interest in the partnership's unincorporated gross income and unincorporated business deductions in 1969, the Department in its answer asserted that the proper figures were 59.446% and 72.759%. The different percentages arrived at by petitioner and the Department reflected a different use of the amount of salaries and interest paid by Goodbody to its partners each year. These amounts were stipulated to by both parties but were used differently in calculating the percentages attributable to the partners.

Respondent, after a hearing, held that: (1) the Department, using 25% of commission income, should recompute the amount of commissions petitioner should include in taxable

income for stock transactions in 1968 and 1969; (2) the Department should not recompute petitioner's commission income for 1965, 1966 and 1967, since refunds for these years were barred by the Statute of Limitations in Tax Law § 687 (a), (d) and § 722 and by Revenue Ruling 81-88 (1981-1, Cum Bull 585); and (3) when the correct procedure for computing the partners' proportionate interests was used, petitioner's partners in 1969 did not have the requisite 80% interest to carry back its net operating loss.

Petitioner's first issue concerns the proper method of calculating the common partners' proportionate interests in the deduction years and the loss years. The difference between petitioner and respondent's positions is a narrow one. They agree on the amount of each partner's distributive share of the partnership's Federal income or loss, on each type of modification necessary to convert the partner's share of Federal ordinary income or loss to the partner's share of unincorporated business gross income or deductions, and on the amount of each modification except one. The only material difference between their positions involves the treatment of the salaries and interest paid by petitioner to its partners, which were deductible in petitioner's computation of its Federal ordinary income or loss and of each partner's distributive share thereof, but were not deductible for purposes of the unincorporated business tax under Tax Law former § 706 (3). While petitioner and respondent agree that the salaries and interest paid to the partners have to be added back to Federal ordinary income or loss, they dispute the manner in which the total salaries and interest are to be allocated to the partners for purposes of determining each partner's interest in the "unincorporated business gross income" and "unincorporated business deductions".

Petitioner contends that the amount of the partner's salaries and interest which are to be added to each partner's share of Federal ordinary income or loss is the partner's share (as set out under the partnership agreement) of the total nondeductible expense incurred by the partnership. Respondent held that the amount to be added is not the partner's share of the expense involved, but the amount of income received by each partner.

Tax Law former § 706 (2) (b) was enacted to make clear that a carry-back would be allowed and drew an arbitrary 80% line to limit the statute's availability. A change in a partnership's membership creates a new unincorporated business; thus, the statute cleared up any ambiguity under Tax Law former § 706

(2) (a) concerning whether a partnership, whose membership had changed over the years, was entitled to a refund occasioned by a net operating loss.

We conclude that respondent's interpretation of the statute is both rational and reasonable and should be upheld. The statute mandates that you look to each partner's "proportionate interest * * * in the unincorporated business gross income and * * * deductions of the partnership" (Tax Law former § 706 [2] [b]). That interest is ascertained through an examination of each partner's actual interest in all items of income, gain, loss and deductions (except services and statutory exemptions), because such interests represent the "net operating loss deduction which would be allowable for the taxable year for federal income tax purposes if the unincorporated business were an individual taxpayer" (Tax Law former § 706 [2] [a]). Because tax losses under Tax Law former § 706 (2) (b) clearly constitute an interest of the partner in the unincorporated business income and deductions, they must be considered in the calculation of the 80%. Thus, where a partner shares in the net profits and losses at an agreed percentage rate and, in addition, he is entitled to a guaranteed amount, his interest in the partnership losses is reduced by the amount he is entitled to receive as a guaranteed payment. This construction of the Tax Law is practical and reasonable and should not be disturbed (see, Matter of Lezette v Board of Educ., 35 NY2d 272, 281; Matter of Howard v Wyman, 28 NY2d 434, 438; Matter of Graham v State Tax Commn., 48 AD2d 444, 445, affd 40 NY2d 889).

Petitioner next challenges respondent's refusal to allow petitioner to adjust its allocation of commission income from bond and commodity orders and urges that the 25% factor applicable to commissions on customers' stock orders is also applicable to commissions on customers' bond and commodity orders. We concur with this contention. Petitioner urges that proof of its entitlement to a lower percentage factor was unnecessary in the instant case because the years involved herein, 1965 to 1969, were included in the block of taxable years for which the arm's length charge was previously demonstrated by the taxpayers in Matter of Bradford & Co. v State Tax Commn. (62 AD2d 69) and Matter of Walker & Co. v State Tax Commn. (62 AD2d 77) to be substantially less than the percentages fixed in pre-1978 tax regulations for commissions from securities (see, 20 NYCRR 207.5 [c]). In any event, petitioner presented the testimony of Michael Castella, an officer of the New York Stock Exchange, whose uncontradicted

testimony, together with supporting documents, established that petitioner was entitled to a lower percentage than the 50% of commission income it had declared for tax purposes on its bond and commodities commissions as well. We note that regulations applicable to years after 1977 provide that the same percentage is to be used to allocate all commission income, regardless of whether the commissions are derived from customers' stock, bond or commodity orders or whether the transactions are executed on an exchange or over the counter. We believe the evidence supports petitioner's contention on this issue.

Petitioner finally contends that Revenue Ruling 81-88 (1981-1, Cum Bull 585) requires respondent, in determining the amount of an overpayment resulting from a net operating loss, to take into account decreases in income which are barred by the Statute of Limitations (the amount of petitioner's overstated commission income for 1965 and 1966) as counteradjustments to increases in income which are barred by the Statute of Limitations (the audit adjustments for the years 1965 and 1966). Revenue Ruling 81-88 states in pertinent part: "[I]f a net operating loss is carried back to a year in which there is a barred adjustment decreasing taxable income, the net operating loss shall be the first adjustment to reported taxable income. If there are barred adjustments increasing taxable income, these adjustments to taxable income will be made as a set-off against the net operating loss * * * *Any barred adjustments decreasing taxable income will be allowed in the carryback year only as counteradjustments to normally barred adjustments increasing taxable income, which must be made for the purpose of determining whether a taxpayer has in fact overpaid"* (emphasis supplied). Respondent contends that the collection of the audit adjustments was not barred since petitioner, before the hearing, consented to waive any period of limitation for the collection of the assessments until the matter of liability was resolved. Petitioner challenges respondent's contention of waiver and contends that no effective waiver occurred.

We conclude that there is no basis in the record to conclude that a waiver occurred. The agreement alluded to in a footnote to respondent's findings would not constitute a waiver unless it was entered into prior to the expiration of the Statute of Limitations set forth in Tax Law § 692 (c) and (h), ·i.e., six years after notice and demand *(see,* 10 Mertens, Law of Federal Taxation § 57.51 [rev vol 1984]). There was no finding in the record that a waiver was made before the expiration of

the Statute of Limitations. We thus hold that petitioner is entitled to have taken into account commission overstatements as offsets pursuant to Revenue Ruling 81-88.

Determination annulled, with costs, and matter remitted to respondent for further proceedings not inconsistent herewith. Main, J. P., Mikoll, Yesawich, Jr., and Levine, JJ., concur.