[No. 19249.   Department One.   June 8, 1925.]

## MATIE E. NICHOLS, *Respondent,* v. OLYMPIA VENEER COMPANY, *Appellant.*[1]

CORPORATIONS (73)—MEMBERS AND STOCKHOLDERS — SERVICES TO CORPORATION—CONSTRUCTION OF CONTRACT. The provision in a contract employing a stockholder in a corporation for certain payments to his heirs or assigns, in case of his "absence from duty," has no application in case of his ·death.

SAME (69)—DIVIDENDS—DECLARATION OF DIVIDENDS — CONSTRUCTION. Where money paid to stockholder employees of a co-operative corporation, as additional compensation dividends, was grossly disproportionate to the amount paid hired employees, and nothing more or less than a division of profits, the courts will interfere at the suit of a protesting stockholder owning stock on which no dividend was ever declared, without which such stock would have no tangible value.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered October 16, 1924, upon findings in favor of the plaintiff, in an action to recover stock dividends.   Reversed.

*J. H. Gordon, James O. Marts,* and *A. W. Tyler,* for appellant.

*Vance & Christensen,* for respondent.

ASKREN, J.—In January, 1921, the Olympia Veneer Company, a corporation, was organized, the by-laws evidencing that it was a cooperative organization. Article I, § 1, prohibits any stockholder from holding more shares of stock than any other member, whether acquired by original subscription, or purchase; Section 2 requires all persons excepting those whose names appear on the original stock subscription list to be elected to membership by a majority vote of the trustees; Article IV, § 2, provides that a person shall be

[1]Reported in 236 Pac. 794.

permitted to hold but one share of stock; Section 3, that stockholders shall not be permitted to sell their stock without first affording the company an opportunity to buy the same, and in no event shall such share of stock be sold to any person until such sale is submitted to the board of trustees for their approval.

On April 13, 1921, one R. I. Nichols, now deceased, subscribed for a share of stock, and the following contract was entered into:

"Contract No. 109.            Olympia, Washington.

"For the consideration of $1,000 the Olympia Veneer Company, Inc. agrees to give R. I. Nichols work in their plant and give said R. I. Nichols one pro rata share of all profits arising from the manufacture and sale of wood products, and R. I. Nichols shall own one undivided pro rata share of all stock held, owned or controlled by Olympia Veneer Co. Inc. R. I. Nichols agrees to do any kind of work in or about the plant in a creditable manner not to work for his personal interest but for the interest of all concerned. R. I. Nichols agrees to work without any compensation whatsoever other than stated above.

"And said R. I. Nichols further agrees that he will waive any and all claims of lien on any of the property herein contemplated or to be acquired by the Olympia Veneer Co. Inc., for and on account of performing the labor herein agreed to be done, and this waiver of rights of lien shall be as binding as if a separate and distinct indenture or waiver had been signed by R. I. Nichols.

"If R. I. Nichols is absent from duty from an unavoidable cause he, his heirs or assigns shall receive his share of the profits, etc. less the cost of a capable person to fill his position. Olympia Veneer Co. Inc., and R. I. Nichols jointly agree that it is the purpose and intention of this contract to be fair and just to all concerned.

"Any stockholder desiring to sell his stock in the company shall notify the Secretary in writing, at least thirty days, of his intention and shall in the same no-

tice offer to sell same to the company at the market value of the same at the time, the market value being determined by the stockholders. The Board of Trustees shall have ten days after the Secretary receives such notice in which to decide whether the company shall purchase same.

"Provided, that no stockholder shall represent that he controls any particular job of work in the company and it shall become his duty to advise any person desiring to purchase his stock that only persons working for the company may become stockholders.

"Provided further, that if such retiring stockholder quits work before sale of his stock is adjusted the Board of Trustees may fill his vacancy and charge the wages so paid to his stock.

"Provided further, that the Company shall have not less than thirty days after accepting such offer in which to make payment for such stock.

"Olympia Veneer Company, Inc.

"R. I. Nichols.          Frank L. White, Pres.
"(Seal)          Edward E. Westman, Sec."

Nichols was employed in the plant until the latter part of 1922. He died on December 11, 1922. Thereafter the corporation paid to the plaintiff, Matie E. Nichols, wife of the decedent, as owner of decedent's share of stock, in monthly payments, the difference between the scale of wages paid to stockholder-employees and the going wage paid to hired employees in the plant, which, at the time of the commencement of this suit, amounted to $520.65. At the end of the year 1922, the board of trustees declared an additional compensation as wages to the stockholders who were actually employed in the plant during the year, of $50 per month, to be paid for. such months as stockholder worked.

It appearing that Nichols had worked ten months of the year 1922, the corporation paid to the plaintiff, after Nichols' death, $50 per month for the ten months

that he had actually .been employed. Thereafter, at the end of 1923, another resolution was passed voting additional compensation in the sum of $175 per month to all stockholders who had actually been employed in the plant during the months from January 1, 1923, to October 31, 1923. This resolution was as follows:

"Whereas, during the ten months of the year from January 1, 1923, to October 31, 1923, the stockholders of the Olympia Veneer Company employed in the plant of said company received wages at the rate of only $5 per day, which scale of wages are less than they might have received employed in a similar work for other companies and receive no dividend or compensation, for the money invested in said plant, and Whereas, it has not only been the understanding among the stockholders of the company employed in the plant, but also the intention and policy of the company that when the business and financial condition of the company would make it possible to do so for the company to pay such additional sums as would make the scale of pay received by the men more equal and just and equitable scale, in return for services rendered and performed by them to the company, and Whereas, it appears to the board of trustees from the records of the company and the facts appearing thereon that the financial condition and assets of the company at this time warrant additional pay being granted to such of the stockholders as devoted their time, energy and attention exclusively to the promotion and carrying on of the business of the company, and rendered valuable services to the company for such services performed, as is recited in the paragraph immediately preceding, Now, Therefore, Be It Resolved, by the board of trustees of the Olympia Veneer Company, that there be and there is hereby voted and allowed to each individual stockholder employed and laboring in the plant of the Olympia Veneer Company devoting his time, energy, and attention to the promotion and upbuilding and conducting the business of said company during the months of January 1, 1923, to October 31, 1923, or any portion thereof, the sum of $175.00 per month for

such time as he was actually engaged in working in said plant and devoting himself exclusively to the promotion and carrying on of the business of the said Olympia Veneer Company as additional compensation for such services so rendered in addition to the amount heretofore paid or credited to said stockholders in said company. Be It Further Resolved that it is the sense and judgment of the board of trustees of the Olympia Veneer Company that the amount allotted to the stockholders as additional compensation for the services rendered as set forth hereinabove be disbursed and paid out to the stockholders entitled to the same at such times and in such amounts and in such manner as to the board of trustees seems most in keeping with the best interests of the business and financial affairs of said Olympia Veneer Company. Be It Further Resolved, that no stockholder of the Olympia Veneer Company is entitled to or shall claim or receive any interest on any amount due or to become due to him according to the terms and conditions of this resolution during such time or any portion of such time as may intervene between the time of the adoption of this resolution and the date of disbursing the allotment herein made. Be It Further Resolved, that this resolution shall take effect and be in force only with reference to the business during the ten months of the year beginning January 1, 1923, and closing October 31, 1923.''

There was then paid to each stockholder-employee who had worked in the plant under this resolution, the sum of $100 for the month of November, 1923, and $100 for the month of December, 1923, and in January, 1924, there was paid to all of the stockholder-employees the sum of $250, making $450 in all, which was the amount of the so-called additional compensation which the stockholders who were actually employed all of the time covered by the resolution received in excess of plaintiff. Plaintiff, Matie E. Nichols, brought an action to require the defendant corporation to pay

her the sum of $450 the same as was paid to the stockholder-employees, and from a judgment in her favor, this appeal was taken.

It is agreed by both sides that there are but two questions to be determined: first, what is the proper construction to be placed upon the words in the contract which provide for absence from duty; and second, were these payments dividends?

It will be seen that the contract contains these words:

"If R. I. Nichols is absent from duty from an unavoidable cause he, his heirs or assigns shall receive his share of the profits, etc., less the cost of a capable person to fill his position."

It is the contention of respondent that this provision provides for any possible contingency, including death, and this was the view of the trial court because of the fact that the word "heirs" was contained in the clause. But we think this construction too broad. It would strain the meaning of the language used to assume that one who is dead is "absent from duty from an unavoidable cause." One who is dead is not absent from duty. There is no duty devolving upon him. Duty refers to those things which are required of a person, and at death all duty ceases. In *Wheeler v. Wheeler*, 35 Ill. App. 123, the court was required to construe the phrase "absent from the state." It was held: "The word 'absent' conveys the idea of a temporary condition, a cessation of, and probability or possibility of returning, presence." The words "his heirs" of course, refer to the death of the stockholder, but we think the proper construction to be placed upon this phrase is that his heirs shall receive his share of the profits in case of his death; and if, because of sickness another person has been employed in his place,

then, in event of death, there should be paid to his heirs the amount due at death, which would be the difference between the amount paid to the temporary laborer and the regular wage which would have been paid to the stockholder had he not been absent from duty. It could not possibly mean that the relation of employee would still exist between the stockholder and the company after the stockholder's death. It will be seen, therefore, that the payments made by appellant to respondent after her husband's death of the difference between the wage paid to the stockholder-employee and to the hired employee were not required by the contract.

Was the money paid to the stockholders as additional compensation dividends? It appears from the record that, during the time covered by this controversy, there were approximately one hundred and ten stockholders of the company, and at the time of the distribution about ninety-six stockholder-employees with about thirty-five or forty hired employees. We are not concerned in this inquiry with the resolution which provided for $50 per month additional compensation during the year 1922, for this was paid to appellant and is not now in controversy. The record shows conclusively, however, that, during the year 1923, the average wage of hired employees in the plant was approximately $15 to $20 per month less than that paid to the stockholder-employees. It will be seen by the resolution that, at the end of October, 1923, there was granted to each of these stockholder-employees who had been receiving more than the average daily wage of the hired employees, an additional sum of $175 per month as compensation, which would make the wage of the stockholder-employees from two and one-half to three times that of the hired employees. In a large plant such as this, there must of necessity be cer-

tain heads of departments in whose hands are the destinies and, to a very large degree, the success of the institution, whose compensation ought, in the very nature of things, to be more than that of the hired employees; but they having all agreed and contracted that the wages of all stockholders should be the same, they are bound by the contract, and we are required to so construe it. The great majority of the stockholder-employees in this plant are doing, according to the testimony, the same character of work as the hired employees. It appears that no man is entitled to any particular job, and it cannot be said that any particular man was employed to take the place of Nichols during his absence, or after his death. If it is true that the majority of the stockholder-employees are working side by side with, and doing the same character of work as, the hired employees, does it follow that their wages should be from two or three times as much? We think not. It will be seen that the resolution providing for additional compensation was made near the close of the year, and according to the testimony of one of the officers of the corporation, after they were able to see how the finances stood, and whether sufficient money had been made during the year. While the resolution studiously refrains from applying the word "dividend" to the money to be distributed, it being referred to as additional compensation, it is significant that the very first sentence recites that the stockholders have "received no dividend or compensation for the money invested in said plant," thereby recognizing that the investment of each stockholder was entitled to dividends and that, since none had been paid, it was one of the reasons why additional compensation should be voted. It is apparent at once that, instead of this being additional compensation, it was nothing more nor less than a division of the profits. It is not our province

nor intention to lay down the rule that a stockholder-employee may not be entitled to greater wages than a hired employee, and it appears that the daily wage was higher. Ordinarily courts will not interfere with the sound judgment of the officers of a corporation in determining the wages to be paid; but in a suit brought by a protesting stockholder owning stock in a company, which is of no tangible value unless dividends are paid upon it, we have no hesitancy in saying that, when the amount allowed to stockholder-employees becomes grossly disproportionate to the amount paid to hired employees in the plant, then the attempted action on the part of the trustees, called by whatever name, is in reality a distribution of dividends in which every stockholder is entitled to share. Especially is this true where no dividend, as such, has ever been declared on the outstanding stock. We hold, therefore, that respondent is entitled as a stockholder to the amounts covered by the resolution of 1923, that were paid to the other stockholders as stockholder-employees. But it appearing from the evidence that the amount already paid her as the difference between the going wage of hired employees and the daily wage paid to stockholder-employees, and which we have held she was not entitled to under the contract, is in excess of the amount due her in dividends, the judgment of the lower court is reversed.

TOLMAN, C. J., PARKER, BRIDGES, and MAIN, JJ., concur.