## MARBLE & SHATTUCK CHAIR CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5529.

Circuit Court of Appeals, Sixth Circuit.

April 8, 1930.

G. P. Bickford and C. M. Horn, both of Cleveland, Ohio (W. B. Stewart and G. P. Bickford, both of Cleveland, Ohio, on the brief), for petitioner.

Helen R. Carloss, of Washington, D. C. (C. M. Charest and Joe S. Franklin, both of Washington, D. C., G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, of Washington, D. C., on the brief), for respondent.

Before DENISON and HICKS, Circuit Judges, and WEST, District Judge.

WEST, District Judge.

During the tax years in question, petitioner was a corporation making and selling chairs; its capital stock being closely held. Up to May 21, 1920, the stock consisted of 500 shares. In February, 1920, 160 shares held by outsiders were purchased and apportioned among the three principal stockholders. Immediately afterwards the four stockholders owning practically all of the stock held meetings at which they considered and discussed their several claims for additional compensation. The president, Mr. Hills, took no active part in the conduct of the business, and received no salary. He limited his claim to reimbursement of about $2,500, which he expended annually in entertaining the company's customers. T. W. Foote became treasurer and general manager in 1913 at a salary of $6,000, which was increased shortly before the first tax year to $12,000 per annum. He had charge of the factory, to which extensions were being made, designed machinery, passed upon matters of credit, and during the year 1920 made sales in the territory covered from the home office at Cleveland, amounting to $200,000. It was agreed that, in addition to his salary, he should have compensation of approximately $20,000 per year. The two other large stockholders were A. B. Hunn and his brother, H. G. Hunn, nephews of the president and brothers-in-law of the general manager. They were in charge of sales in the East and at Chicago, each receiving a commission of 7 per cent. of gross sales, out of which office and traveling expenses were paid. For the fiscal year ending June 30, 1920, A. B. Hunn's sales were $356,282, and for the first half of the next six months were $110,756; during the next six months he was in the plant assisting in its management. H. G. Hunn's sales for 1920 were $230,240, and for 1921 were $131,581. Each of the brothers collected his stipulated commissions, and, during the year ending June 30, 1920, an additional sum of 25 cents per chair sold, this latter amount being discontinued on the date named. At the conference they showed that, to put them on an equality with other salesmen for similar concerns whose salesmen maintained their own offices, they should have commissions of 10 per cent.

Thereupon it was determined that additional compensation should be paid to these four men, and, the approximate payment to each being settled, it was left to Mr. Foote to fix these sums definitely; and this he did by using their holdings of common stock as a basis and awarding as follows:

|            | Common stock | Preferred stock |          |
|------------|--------------|-----------------|----------|
| F. D. Hills | 480         | 750             | $ 2,560  |
| A. B. Hunn  | 2160        |                 | 11,520   |
| H. G. Hunn  | 900         |                 | 4,800    |
| T. W. Foote | 3942        |                 | 21,120   |
|            | 7482         |                 | $40,000  |

Charles Hanson, the secretary, owned eighteen shares, but his salary was not increased at this time; later, in August, 1920, it was raised $300 per year, effective July 1, 1920.

The $40,000 additional annual compensation, so-called, equalled $5.333 per share on the common stock, which had been increased in May, 1920, from 500 shares to 7,500 shares. The $96 in respect of Hanson's shares appears to have been allotted to Foote. At the beginning of the fiscal year 1920 the company's surplus was $405,269.-24; and for the fiscal years ending June 30,

1920, and June 30, 1921, its net income before the claimed deductions was $241,738.75 and $56,047.41, respectively. For each of said years 1920 and 1921 the petitioner paid additional amounts to the beneficiaries of this arrangement, totalling $40,000, and apportioned as shown above, as the result of which they received from their company the following:

|  | 1920 | 1921 |
|---|---|---|
| F. D. Hills | $2,560.00 | $2,560.00 |
| A. B. Hunn | 36,459.30 | 19,902.92 |
| H. G. Hunn | 20,680.26 | 13,661.63 |
| T. W. Foote | 33,120.00 | 33,120.00 |

The petitioner paid no dividends as such during the fiscal year ending June 30, 1920, and as to dividends for the ensuing year the record is silent.

The Commissioner determined deficiencies against the petitioner for both years, and disallowed the deduction of $40,000 so distributed to stockholders in each year; and on appeal the Board of Tax Appeals sustained the Commissioner, except as to the $2,560 paid to Hills, which it held deductible as being a reimbursement of expenses incurred for the petitioner in conducting its business.

Section 234(a) of the Revenue Act of 1918 (40 Stat. 1077) and of the Act of 1921 (42 Stat. 254), respectively, which are identical in language, provide that in computing the net income of a corporation there shall be allowed as deductions: "(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * *" And under this the petitioner claimed authority to make the deductions from its gross income.

The opinion of the Board stated its inability from the evidence before it to determine what would be reasonable compensation for the services of the stockholders which were actually rendered during the fiscal years 1920 and 1921. It did not regard the statement of Mr. Foote that he should receive 10 per cent. on sales made at the factory as sufficient to establish the reasonableness of the addition of $21,120 to his $12,000 salary, especially as it did not appear that he incurred any expenses in connection with the sales or that he was responsible for sales made during the fiscal year 1921, although the same additional sum was then paid to him. And similar vagueness was held to exist as to the compensation of A. B. and H. G. Hunn. Neither showed how much the 25 cents per chair received during the fiscal year 1920 added to his commissions.

From the evidence the Board determined that the balance of the $40,000 annually paid, less the sum of $2,560 to Hills, was not intended as compensation, but constituted distributions of profits under the guise of additional compensation.

The petitioner argues that various facts found by the Board, with inferences to be drawn therefrom, are entirely inconsistent with this conclusion. It claims that the findings show that the interested stockholders made demands for more pay, and that the company treated the matter as having reference to compensation rather than profits or dividends, and that this corporate attitude raises a prima facie presumption in the petitioner's favor citing Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F.(2d) 42, at page 45; that, after the arrangement was agreed to, the allowance of 25 cents per chair was discontinued, indicating a genuine readjustment of compensation to the Hunn brothers; that the condition of the company was such that, if profits were to be distributed, it was likely that payments would have been greater, and that to treat the money as compensation would and did result in its taxation to the recipients, with comparatively small tax saving to the corporation; that distribution was not strictly according to stock holdings, the 750 shares of preferred held by Hills not being recognized, while Foote received $96 more and Hanson $96 less than their common stock entitled them to on the basis of $5.333 per share. And contends that the action of the Board of Tax Appeals in allowing the deduction of $2,560 to Hills, while approving the Commissioner's refusal to permit deduction of the remainder of the payments, was inconsistent—that both could not be correct.

As to the payment to Hills, his preferred stock had existed less than six weeks before the close of the first fiscal year, so that its exclusion from any distribution of that year's profits would not be unlikely. There is no showing that this preferred stock represented new capital, nor as to when it became entitled to dividends. Nor did the Board base its conclusion solely upon the fact that the distribution was on the basis, substantially, of holdings of common stock. If its finding that the payments to Hills, although computed on this basis, could be deducted as expenses shown to have been incurred and to be incurred again, stands on a rather weak foundation, that affords no

ground of complaint to petitioner, which was benefited by it. Twin City Tile & M. Co. v. Commissioner (C. C. A. 8) 32 F.(2d) 229.

■ As to the other criticisms of petitioner, it seems to the court that there is little force in the argument that to deny the deductions to the corporation results in only a small tax loss when account is taken of the taxes paid by the stockholders individually. However that may be, the deductions should not be allowed if thereby the corporation is enabled to escape its full liability. As the 25 cents per chair was paid to A. B. Hunn and H. G. Hunn for 1920 but not for 1921, and as the additional payments to these stockholders were precisely the same for both years, we fail to see how the discontinuance of the 25 cent commission shows an actual readjustment of compensation. The additional payments were not affected by, or readjusted to, commissions received. To say that if the profits were to be distributed the amount would probably have been greater, is to merely speculate; and $40,000 per year is not a small or insignificant sum.

Any presumption that additional compensation was being fixed, arising from the fact that the corporate action taken so indicated, would be overturned whenever the facts found disclosed that the directors and shareholders were in fact distributing profits. The Board did so find, and we regard the facts found by it amply sufficient to support that conclusion.

In 1920 no dividends as such were declared; nor, so far as disclosed, were any paid in 1921. As prosperous corporations do not usually fail to make some distribution of their profits as such to their stockholders, this omission, coupled with the fact that the distributions in question were to holders of common stock on the basis of their holdings, is very strong evidence that the payments were, and were intended to be, of profits, disguised somewhat to simulate additional compensation.

Mr. Foote and the two Hunn brothers were drawing, and continued to receive, substantial compensation in the form of a salary and commissions. Sales fell off rapidly in 1921, but that made no difference in the additional amounts paid to them; these being the same in both years. Mr. Foote claimed an additional $20,000 per year, to be based on sales he made, which, it

seems, had amounted to $200,000. But no account was taken of the fact that he had no office expenses, as did the others, who sold on commission; nor of the decreased sales during the second year.

This subject was dealt with immediately after outside interests owning 160 out of 500 shares of the then stock had been bought out. Of these, Mr. Foote secured 80, A. B. Hunn 55, and H. G. Hunn 25, shares, and the additional payments involved were based upon their total holdings, including this newly acquired stock, after the common stock had been increased to 7,500 shares.

These and other matters appearing from the findings of the Board indicate very clearly distributions of profits rather than compensation for services.

■ The petitioner also claimed the right to deduct $5,333.06 expended by it during the fiscal year ended June 30, 1921, in making changes in its building. Beams and floor boards were found to be subject to dry rot due to inadequate ventilation. An outside wall had been so shaken by passing trains that it began to crack and bricks fell from it. Under the advice of a civil engineer windows in the wall were bricked up, holes cut in the foundation, and a ventilating pipe run through the building to the roof. In doing this the roof was damaged to the extent of $1,201.75. Bricking up windows, cutting holes in the foundation, and putting in the ventilating flue cost $3,831.33.

The Board was of opinion that bricking up the windows and putting in the ventilating pipe was betterments or improvements, the cost of which could not be deducted, while the expense of repairing or replacing the roof, amounting to $1,201.75, was deductible. We see no reason to question the propriety of this conclusion of a body expert in the determination of these matters.

We think the taxpayer failed to sustain the burden it was under of showing that the findings of the Commissioner of Internal Revenue respecting the alleged additional compensation and the expenses of changing the building were wrong. Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; Austin Co. v. Commissioner, 35 F.(2d) 910 (6 C. C. A.).

The action of the Board of Tax Appeals is affirmed.