[Civ. No. 9625.  First Appellate District, Division Two.—January 18, 1935.]

ANGELO DE MARTINI et al., Respondents, v. SCAVENGER'S PROTECTIVE ASSOCIATION (a Corporation) et al., Appellants.

O'Gara & De Martini for Appellants.

Brobeck, Phleger & Harrison for Respondents.

STURTEVANT, J.—The plaintiffs sued to recover their portions of dividends and to obtain an injunction prohibiting certain wrongful practices. In deciding the case the trial court made very full and complete findings. From the judgment entered thereon the defendants have appealed.

The brief of the defendants proceeds as though they were making their contentions in the trial court, but as that court made full and complete findings they are controlling in this court in so far as they are material and are supported by competent evidence. It is necessary, therefore, to briefly summarize the findings.

The Scavenger's Protective Association is a corporation organized under the general laws of the state of California and engaged in the business of collecting garbage and refuse in San Francisco. It has an authorized capital stock of $500,000 divided into 5,000 shares of the par value of $100 each. Stock has been issued to 169 stockholders, each one of whom is the owner of twenty shares. The natural persons named as defendants are the directors. De Martini, Bevalaqua, Chiappellone and Elsie Cavagnaro, as executrix of her husband's estate, are stockholders but not employed by the association. Each of them owns twenty shares.

"III. That at all times mentioned in said complaint approximately 160 stockholders of said defendant corporation have been employed either continuously or from time to time as scavengers and collectors of garbage and money, and for the performance of other services and duties for said

defendant corporation. That each and every one of said stockholders so employed by said defendant corporation at all times mentioned in said complaint as scavengers or collectors of garbage was so employed at a wage of $6.50 for each day of work performed. That said defendant also employed certain stockholders from time to time to collect money, and every such stockholder while so employed was paid a wage of $1.50 for each working day upon which such stockholder did not work as a scavenger or collector of garbage. That said daily wage of $6.50 and no more was, at all times mentioned in said complaint, a reasonable wage to be paid to each of said stockholders for each day of work as scavengers, and the said wage of $1.50, and no more, is a reasonable wage for each such stockholder employed as a collector of money for each working day upon which such stockholder does not work as a scavenger. That at all times mentioned in said complaint said defendant corporation has earned net profits, after the payment of all current expenses, in amounts varying from month to month. That said defendant corporation did, at all times mentioned in said complaint, monthly pay to all of its stockholders, except said plaintiffs, dividends from and out of said profits and earnings of said corporation and has distributed said earnings and profits in the following manner:

"At the expiration of each calendar month at all times mentioned in said complaint there has been paid to each of the said stockholders in the employ of said corporation the sum of $316, less $6.50 for each working day in each such month that the stockholder did not work in the employment of said defendant corporation, except in those cases where such stockholder was at the time employed as a collector of money, in which case the said defendant corporation paid to such last-mentioned stockholders the sum of $316 less $5.00 for each working day that each such stockholder did not collect garbage. That at all times since the filing of said complaint the sum of $6.50 and no more, was and is, a reasonable daily wage to be paid to said stockholders employed by said defendant corporation as scavengers and collectors of garbage, and the sum of $1.50 and no more, was and is a reasonable wage per working day for said stockholders employed in the collection of money

694

when not collecting garbage. That each and all of said monthly distributions and payments to each of said stockholders in the employ of said defendant corporation were dividends to the extent that they exceeded $6.50 for each day of work of such stockholder as a scavenger or collector of garbage during the calendar month next preceding such payment, and $1.50 for each working day while such stockholder was a collector of money but did not work as a scavenger, although such excess payments were made to such stockholders under the guise and upon the pretense that the same were, in fact, payments of compensation and salaries due to the stockholders of said defendant corporation, in truth and in fact such payments monthly were not, and never were, paid to said stockholders, or any of them, as salaries or earnings, but wholly without regard to or reference to any services performed by any such stockholders for said corporation, and in many instances in the absence of the performance of any services whatever. That each such monthly distribution and payment to each of said stockholders in the employ of said defendant corporation in the sum of $316, less $6.50 multiplied by the number of working days in the month preceding such payment, has been paid from and out of the earnings of said corporation and constitutes dividends. That the said working days in each calendar month were and are all days except Sundays. That the amounts so distributed and paid to each of said stockholders in the employ of said defendant corporation during the said period of time as dividends, and the dates of payment thereof, are hereinafter specified as follows: (Here follow amounts and dates.)

"IV. That neither the plaintiff Angelo De Màrtini nor the said plaintiff Pietro Bevalaqua has been in the employ of said defendant corporation since the 14th day of March, 1929, and that said defendant corporation has not paid to said plaintiff Angelo De Martini or said plaintiff Pietro Bevalaqua the said dividends so distributed and paid to its stockholders in its employ since said last-mentioned date, or any part thereof, excepting only that said defendant corporation did pay to said plaintiff Angelo De

Martini in April of 1929 the sum of $95.50, and no more, and did pay to said plaintiff Pietro Bevalaqua in said month of April, 1929, the sum of $95.50, and no more. That said plaintiff Elsie Cavagnaro, as executrix of the estate of Philip Cavagnaro, deceased, has not been in the employ of said defendant corporation at any time whatsoever, and that said defendant corporation has not paid to said plaintiff Elsie Cavagnaro, as executrix of the estate of Philip Cavagnaro, deceased, the said dividends so distributed and paid to its stockholders in its employ since the 31st day of May, 1929, or any part thereof. That said plaintiff Louis Chiappellone has not, since the 31st day of March, 1930, been in the employ of said defendant corporation, and that said defendant corporation has not paid to said plaintiff Louis Chiappellone the said dividends so distributed and paid to its stockholders in its employ since said last-mentioned date. That said plaintiffs are entitled to receive from and be paid by said defendant corporation the sums hereinafter set opposite to their names respectively, the said sums being the aggregate of the sums so distributed and paid to each stockholder employee of said defendant corporation, but not paid to said plaintiffs: (Here follow names and amounts.)

"V. That in addition thereto said plaintiffs, and each of them, are entitled to interest as follows: (Here follow names and amounts.)" In addition to the amounts distributed under finding number III, $5 per share on each share of stock outstanding was declared on April 1, 1929, July 1, 1929, and October 1, 1929. To the plaintiffs De Martini, Bevalaqua and Cavagnaro $100 was paid April 1, 1929, July 1, 1929, and October 1, 1929, but no more since the 14th day of March, 1929. But to plaintiffs Elsie Cavagnaro and Louis Chiappellone no additional payments have been made. That such distributions will continue unless enjoined. That after the commencement of the action the defendants continued the same practice down to the date on which an accounting was had. That they threatened to and will unless restrained continue the same practice.

After making the foregoing findings the trial court appointed a referee to state the accounts. When his report

came in the court made additional findings as to amounts paid and amounts due but not paid to the plaintiffs. Thereupon it ordered judgment in favor of each as to the balance so found due to each of them.

■ No claim is made that any error in calculations was made. Except as hereinafter noted no claim is asserted that any provision contained in the articles of incorporation, the by-laws, or in any formal contract authorized the practice followed by the defendant. However, they strenuously contend that this entire proceeding is an unwarranted attack on a resolution adopted by the board of directors on February 5, 1929, and ratified by the stockholders on February 7, 1929, by a vote of 102 to 23. The resolution provided:

"Resolved that the wages of all boss scavengers who perform services for this corporation shall, on and after the adoption of this resolution, be set at three hundred and sixteen ($316.00) dollars per month, and be it further

"Resolved that all boss scavengers who are absent from work shall suffer a deduction of only five ($5.00) dollars per day for each day when such boss scavengers are absent from work in the event that said boss scavengers so absent shall, during the months, attend to the collection of money from customers, and that such boss scavengers who are absent from work, but who do not perform such collection services, that is to say, who do not collect the money due from customers on the route, shall suffer a deduction of six and 50/100 ($6.50) dollars per day, but unless such absentees shall present either a certificate of sickness or be given a leave of absence by the board of directors or the president of said corporation, they shall suffer a deduction of full and complete wages for each day absent based upon the monthly wages of three hundred and sixteen ($316.00) dollars per month, it being the purpose of said deduction to provide for the employment of men as substitutes to assist in the collection of garbage in the place and stead of the absentee to such an extent and to such a degree as said substitutes may be able, it being further understood that the said boss scavengers so absent from work, shall use their best endeavors upon their return to work, to make up the loss in

business and work incurred by the necessity of hiring said substitutes who are unable to perform the full amount of work ordinarily performed by boss scavengers, and be it further

"Resolved, however, that no wages at all shall be paid to any boss scavenger who is able to work but refuses to work." Having quoted it in full the defendants state in their brief:

"The appellants contend, *first,* that the foregoing resolution was intended to be effective as a rule or order fixing the rate of wages of the working stockholders employed by the defendant corporation at $316.00 per month; *second,* that the Board of Directors had full power and authority to adopt and enforce the terms of said resolution; *third,* that the resolution when accepted by the stockholders constituted a contract and operated as a promise binding on the corporation to pay the wages specified when the stockholders complied with its condition; *fourth,* that the corporation had full power to enter into the contract to pay said monthly wages to its working stockholders in return for their services, even if said wages exceeded the reasonable value of such services, especially because of its possession of cooperative features; and *fifth,* that the Superior Court was not authorized to limit, restrict or condition the corporation's contract to the alleged reasonable value of $6.50 per day in the case of stockholders working as scavengers or of $1.50 per day in the case of stockholders working as collectors of money, or to make a new contract of any kind for the corporation or to award judgment to plaintiffs for dividends which were never declared or intended by the corporation, because the parties to such contracts are protected by the provisions of Article I, Section 1, of the Constitution of California."

Except as said resolution by its terms, or by its application by the board of directors, purports to authorize the distribution of profits among a part of the stockholders and not among all, we do not understand the plaintiffs make any objection to it. There is not a particle of evidence that the plaintiffs ever made any contract waiving their rights to

share in the profits. The resolution, as found by the trial court, was in effect a continuing order for the distribution of the profits and, to that extent only, was involved in this action. We are not asked to hold, and we are not holding, that a valid contract of employment by a corporation may not be made which provides for a distribution of the profits to its stockholding employees. But, by merely calling the distribution wages, a corporation may not so distribute the profits as to deprive any stockholder of his rights thereto. The entire subject came before the Supreme Court of Washington in the litigation over the affairs of Olympia Veneer Company. In *Nichols* v. *Olympia Veneer Co.*, 135 Wash. 8 [236 Pac. 794], at page 797 [236 Pac.], the court said: "Ordinarily courts will not interfere with the sound judgment of the officers of a corporation in determining the wages to be paid; but, in a suit brought by a protesting stockholder owning stock in a company, which is of no tangible value unless dividends are paid upon it, we have no hesitancy in saying that, when the amount allowed to stockholder employees becomes grossly disproportionate to the amount paid to hired employees in the plant, then the attempted action on the part of the trustees, called by whatever name, is in reality a distribution of dividends in which every stockholder is entitled to share." When the same case again came before the court, *Nichols* v. *Olympia Veneer Co.*, 139 Wash. 305 [246 Pac. 941, 48 A. L. R. 504], at page 943 [246 Pac.], Mr. Justice Fullerton writing the opinion said: "The appellant's right is to share in the profits of the corporation. As a stockholder she is entitled to a just proportion of all the earnings of the corporation that may justly be classed as a division of the profits, whatever may be the form adopted for their distribution. The respondent is permitted to select the manner, and, if it chooses to do so in the form of wages, it is acting within its rights. But by calling the distribution wages it cannot deprive the appellant of her just proportion thereof. It cannot, by paying excessive or extravagant wages to the working stockholders, deprive the appellant of her share of the profits of the business." In that case, as in this, the board of directors had passed formal resolutions.

In that case, as in this, it was shown that the resolution was but an attempt to call the payments *wages* although, in truth and in fact, the payments were only in part wages and the balance was a distribution of the profits. The general principle enunciated in the Veneer cases has been stated in numerous cases. (*Cliffs Chemical Co.* v. *Wisconsin Tax Commission,* 193 Wis. 295 [214 N. W. 447]; *People* v. *Gilchrist,* 209 App. Div. 120 [204 N. Y. Supp. 509, 513]; s. c., 220 App. Div. 362 [221 N. Y. Supp. 683]; *Lorimier-Greenbaum Co.* v. *Gilchrist,* 212 App. Div. 733 [209 N. Y. Supp. 633, 635]; *United States* v. *Philadelphia Knitting Mills Co.,* 273 Fed. 657, 659].)

The defendants also assert that the trial court did not make a finding on the "purpose" of the defendants in adopting the resolution hereinabove set forth. It is sufficient to state that the trial court made a finding on every material issue and other findings were not necessary.

We find no other point that requires discussion.

The judgment appealed from is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 18, 1935.