[Civ. No. 14017. First Dist., Div. Two. Jan. 26, 1950.]

DORIS KOHN, Plaintiff and Appellant, v. MARION H. KOHN, Defendant and Appellant.

Erskine, Erskine & Tulley, Morse Erskine, Gavin McNab, Schmulowitz, Aikins, Wyman & Sommer, Nat Schmulowitz, Peter S. Sommer and Sidney DeGoff for Plaintiff and Appellant.

Philip S. Ehrlich, Albert A. Axelrod and R. J. Hecht for Defendant and Appellant.

DOOLING, J.—Doris and Marion Kohn were married in 1927, separated in 1941, and in 1942, executed a property settlement agreement which was incorporated into the interlocutory decree of divorce obtained in the same year. The agreement was also made a part of the final decree of divorce in 1944.

This action was tried upon an amended complaint filed November 15, 1946, by Doris (hereafter called plaintiff), for the enforcement of the agreement against Marion (hereafter called defendant), alleging on the basis of information and belief that defendant had misstated his income for the years 1943, 1944, and 1945, and had concealed his true income. She asked in the amended complaint that the agreement be enforced; for an accounting; for judgment in the amount found to be owing her; for an order declaring her right to inspect defendant's accounts in the future; for a restraining order and injunction against altering, concealing or destroying records; for costs; and other relief generally.

The agreement provides that defendant is to pay to plaintiff each year 30 per cent of his net income for the year previous to payment, in 12 monthly instalments. It further settles the property interests of the parties. The pertinent provisions follow.

Paragraph 5 defines "net income" for the purposes of the agreement as "(a) The gross yearly receipts . . . in cash or its equivalent, less the amounts paid . . . as income taxes . . . and without deduction for capital losses (except when realized upon the sale of stocks or bonds) and . . . without the addition or inclusion of capital gains and profits, unless such capital gains and profits be reduced to cash or other liquid form, in which latter event, any profit realized by capital sales or conversions, or otherwise, shall constitute income.

"(b) Provided that the amount to which (plaintiff) shall be entitled monthly (hereunder) shall remain in excess of $350.00, any income derived . . . from rentals of the real property situated in the County of Marin . . . and any income derived . . . as compensation for personal services . . . and any income derived . . . from additional inheritances or from voluntary gifts hereafter made to (defendant) shall not be considered or constitute for the purpose hereof any part of the income . . ..

"(c) In the event, however, that (the amount payable as above defined falls below $350.00, defendant) shall pay . . . from the sums excluded from income in subparagraph (b) . . . such portion thereof not to exceed 30% as, when added to said sum of less than $350.00 monthly, will total not to exceed $600.00 monthly . . .."

Paragraph 11 settles various property interests of the parties. By it plaintiff assigns to defendant all her interest in: "(a) The moneys and property received (by defendant) by way of compromise of the will contest . . . in the Estate of George Kohn . . . and of the claims (of defendant) to share in said estate, and in and to any and all stocks, bonds, securities and other property purchased with any moneys received by way of said compromise and the substitutes for and reimbursements of any and all property purchased with any portion of said moneys received by way of compromise;

"(c) The interest of (defendant) in and to the estate and assets thereof of Eva Heller Kohn, deceased, including all trusts and the properties, real and personal, constituting the corpus thereof, but excepting therefrom any rights of (defend-

ant) to the income from said trusts after the same is paid to (defendant);

"(e) The certain real property situated in the County of Marin . . .."

The court after trial in which, over defendant's objection, transactions for the year 1946 were also inquired into gave judgment for the plaintiff for certain additional amounts based on defendant's income as found by the court for those years. From this judgment both plaintiff and defendant have appealed. We shall consider these appeals separately taking up first

### DEFENDANT'S APPEAL

The issues presented upon this appeal will be discussed and treated under separate headings.

I. *Was it error to include as income under the agreement, income from the property received by defendant from the estate of George Kohn?*

Defendant and plaintiff are in agreement that plaintiff has no right to any of the property obtained by defendant from the estate of George Kohn, deceased, because plaintiff has relinquished all such claims by paragraph 11(a) of their property settlement agreement. The issue raised here is whether the income derived from that property by defendant is to be included in his "net income" as defined by, and for the purposes of, the property settlement agreement.

Although the above mentioned paragraph 11(a) deals specifically with this property, it says nothing whatsoever about the income from such property, hence it is no help in itself. It is pointed out by defendant that with respect to the estate of Eva Heller Kohn (par. 11(c)), plaintiff has relinquished all rights to the corpus, but specifically reserved her interest in the income from the trust. It is argued by defendant that had the intention been to reserve such a right to income in the estate of George Kohn, there would have been a similar specific reservation of income in paragraph 11(a) dealing with that property. It seems quite apparent, however, that neither of these paragraphs is primarily concerned with income, inasmuch as the provisions for income are set out specifically and in detail in paragraph 5. The purpose of paragraph 11 is manifestly to settle property interests as such. Therefore the fact that it seemed advisable to reserve rights to income in relinquishing rights to the corpus of a trust (par. 11(c)) is not convincing that omission of a right to income in relinquish-

ing rights to property to be held by defendant outright is dominantly significant in the construction of the contract.

Good reason for the express reservation of the right to participate in income from the trust appears in the fact that under the trust defendant has no legal title to any part of the corpus of the trust his principal right being to receive income therefrom, and in the absence of such express reservation plaintiff's assignment to defendant of "the estate and assets . . . of Eva Heller Kohn, including *all trusts* . . ." might well have been construed to include the income from such trust, the right to receive which constituted defendant's principal property right therein. In the case of money and property received from George Kohn's estate defendant had the legal title thereto and the assignment of plaintiff's interest therein would carry no similar implication of a waiver of the right to receive income derived therefrom.

It is a well established rule that a contract must be read from its four corners, and emphasis should not be given to a particular part of a contract so as to make nugatory another part thereof. (Civ. Code, § 1641; 6 Cal.Jur. 258 and cases cited therein.) To place emphasis upon paragraph 11, in ascertaining the items of income for the purposes of the agreement, would be to ignore the paragraph which, by the very terms of the contract itself, was intended to govern the accounting of income. Such a mode of construction cannot be followed, as it is the duty of the courts to construe a contract according to the manifest intent of the parties. (Civ. Code, §§ 1636-1639; 6 Cal.Jur. 252-255 and cases cited therein.)

Paragraph 5, in defining "net income" for the purposes of this contract, is drafted in inclusive terminology, so as to include *all* "gross yearly receipts" unless specifically excepted. There is no provision in paragraph 5 by which the income from the property received from the estate of George Kohn could be excepted.

It further appeared at the trial that the practical construction of the contract by both defendant and plaintiff, and the construction and interpretation by which defendant was guided even after the initiation of this action, and until during the actual progress of the trial counsel for defendant for the first time suggested the construction now contended for, was that the income under discussion here was subject to the claims of plaintiff as income under the agreement. Such conduct will not be ignored unless the contract is very clear that the

parties have misconstrued it. As stated in *Mitau* v. *Roddan*, 149 Cal. 1, 14 [84 P. 145, 6 L.R.A.N.S. 275]: "It is to be assumed that parties to a contract best know what was meant by its terms, and are the least liable to be mistaken as to its intention; that each party is alert to his own interest, and to insistance on his rights, and that whatever is done by the parties contemporaneously with the execution of the contract is done under its terms as they understood and intended it should be . . .." (See, also, *Barham* v. *Barham*, 33 Cal.2d 416, 423 [202 P.2d 289]; *Lemm* v. *Stillwater Land & Cattle Co.*, 217 Cal. 474, 481 [19 P.2d 785]; *Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17]; *Moore* v. *Wood*, 26 Cal.2d 621, 629 [160 P.2d 772]; *Roy* v. *Salisbury*, 21 Cal.2d 176, 184 [130 P.2d 706]; *Tanner* v. *Title Ins. & Trust Co.*, 20 Cal.2d 814, 823 [129 P.2d 383]; *Commercial Discount Co.* v. *Cowen*, 18 Cal.2d 610, 615 [116 P.2d 599]; *Thew* v. *Thew*, 35 Cal.App.2d 691, 695 [96 P.2d 826]; 20 Am.Jur., Evidence, § 1144, p. 998; 1 Rest., Contracts, § 235(e).)

■ II. *Was it error to include as income under the agreement the profits made by defendant in real estate transactions, a part of which may be subject to a claim by a third party?*

Defendant joined with one Jacob Barman as joint adventurer for the purpose of purchasing and selling real property, the profits to be divided evenly between them. As a result of this agreement certain of the profits paid to defendant and treated by him as his own income are asserted to be subject to a possible claim by Jacob Barman. Defendant asserts that he has paid Barman in full, and owes him nothing, but that since Barman denies this and claims that money is owing him, he should be allowed a credit. The testimony of Barman makes it clear that while originally he had made such claim, this claim was satisfied by the transfer to Barman of one-half of the stock in the corporation hereafter discussed. The testimony of Barman, in part, was as follows:

"Mr. Postel: Now, as far as you are concerned, the formation of this corporation settled all finances between you and Mr. Kent? A. That's right. . . . Q. In other words, when you formed the corporation, you started even, with a clean sheet, so far as you and Mr. Kent were concerned, is that a fact. A. That's right."

In view of the state of the record, it would be manifestly unjust to deny plaintiff the right to participate in these moneys, as to which Barman expressly testified that his claim had been settled.

III. *Was it error to admit into evidence testimony regarding the affairs of the Federated Investment Company, and to find that the salary paid to defendant was in fact a dividend and hence within the definition of income in the property settlement agreement?*

Two parcels of rental-bearing real property purchased by defendant under the joint venture agreement with Barman were conveyed to a corporation formed for the purpose in which defendant owned one-half the stock and Barman and his wife the other one-half. The inquiry here concerns the sum of $3,600 paid to defendant by said corporation as a salary for the year 1946, a like amount having been paid to Barman as a salary for the same period. The trial court found the net income of the corporation for 1946 to have been $7,935.02 and further found the payments of $3,600 to each of the two stockholders to have been in fact dividends.

There is abundance of legal authority to support this finding. In *De Martini* v. *Scavenger's Protec. Assn.,* 3 Cal. App.2d 691 [40 P.2d 317], this court considered a similar question and held that excessive salaries paid to stockholders of a corporation should be treated as dividends. The same rule was applied in *Nichols* v. *Olympic Veneer Co.,* 135 Wash. 8 [236 P. 794] and *Nichols* v. *Olympic Veneer Co.,* 139 Wash. 305 [246 P. 941, 48 A.L.R. 504]. Many similar cases may be found in the books. (*Grants Pass Hardware Co.* v. *Calvert,* 71 Ore. 103 [142 P. 569]; *In re Wilson's Estate,* 85 Ore. 604 [167 P. 580]; *Freeman* v. *Rogers White Lime Co.,* 138 Ark. 312 [211 S.W. 146]; *Hartley* v. *Pioneer Ironworks,* 181 N.Y. 73 [73 N.E. 576]; *Thiry* v. *Banner Window Glass Co.,* 81 W.Va. 39 [93 S.E. 958; L.R.A. 1918B 1048]; *United States* v. *Mellon,* 279 F. 910, 281 F. 645; *Marble & Shattuck Chair Co.* v. *Comm'r of Internal Revenue,* 39 F.2d 393; *Jacobs & Davies* v. *Anderson,* 228 F. 505 [143 C.C.A. 87]; *Doyle* v. *Mitchell Brothers Co.,* 247 U.S. 179 [38 S.Ct. 467, 62 L.Ed. 1054].) The rule to be gleaned from these cases is that, however denominated, a distribution of earnings to corporate stockholders may be treated as dividends where that is their practical effect and justice will be served by so treating them.

In this case it appeared that the services rendered by defendant to the corporation were hardly more than nominal, that $3,600 was almost one-half of the corporate earnings for the year and bore no reasonable relation to the services rendered.

■ Defendant's claim in this court that some portion of the $3,600 should have been allowed him for the reasonable value of the services actually performed by him is not tenable for several reasons: He made no attempt to prove the reasonable value of his services; they were, so slight as to be practically inconsequential; the salaries were fixed on September 18, 1946, after it was apparent that the earnings for the year would approximate their total; by admission of his counsel defendant was using the corporation in a deliberate attempt to minimize his earnings subject to the agreement with his wife and on all the facts the trial court was entitled to conclude that the entire purported salary was in fact a division of the profits of the corporation.

■ Defendant's citation of cases holding that a court will not intermeddle in the internal affairs of a corporation is not pertinent. The court did not interfere with any corporate activity. It merely inquired into the corporate transactions to determine the true nature of the payment to defendant under the guise of salary. That it had this power is attested by the cases hereinabove cited.

■ IV. *Was it error for the trial court to include in its judgment plaintiff's share of defendant's income subsequent to 1945?*

The amended complaint was filed, as above noted, on November 15, 1946. At that time the 1946 income was not ascertained and the payments based thereon would not begin to accrue under the agreement until January, 1947. The allegations of the complaint were directed to the previous years, the only period that could at that time be put in issue, but the prayer was for a general accounting. At the time of trial, however, 1946 was complete and payments had been made for 1947, purportedly based on defendant's 1946 income. The situation permitted and justified an accounting for that year. Defendant's only argument here is that plaintiff should have filed a supplemental complaint covering 1946. Under the decisions that was not necessary.

The precise question was ruled on by this court in *Union Oil Co.* v. *Mutual Oil Co.*, 19 Cal.App.2d 409 [65 P.2d 896]. In that case complaint for an accounting of the proceeds from oil and gas removed from premises leased by plaintiffs was filed and without supplemental pleadings the account was taken to the time of trial. This court said at page 412:

''The findings and judgment were responsive to the issues thus made and in our opinion it was unnecessary for plaintiffs

to file supplemental pleadings in order to sustain the money judgments which included the value of the oil and gas so taken both before and after the filing of the complaint and up to the time of the entry of judgment. It was the duty of the trial court under the circumstances to adjust the rights of the parties up to the time of the entry of judgment and to leave nothing open to further litigation.''

The rule was thus announced by the Supreme Court of Illinois in *Rhodes* v. *Ashurst*, 176 Ill. 351 [52 N.E. 118, 120] :

''The interlocutory decree usually directs that all matters of account shall be adjusted down to the time of stating the account, even though no facts are stated in respect to them in the pleadings. 1 Enc. Pl. & Prac. p. 103. To hold that matters of account arising during the pendency of the suit could not be considered would be to circumscribe the power of equity to do complete justice, which is one of its attributes.''

█ The technical nature of defendant's argument is shown by his admission that if a supplemental complaint had been filed the inquiry into the 1946 transactions would have been unobjectionable. Since the adoption of section 4½, article VI of our Constitution such objections, even though well founded, are not grounds for reversal on appeal unless the court can find that an appellant has suffered prejudice. (*Steffen* v. *Refrigeration Discount Corp.*, 91 Cal.App.2d 494, 500 [205 P.2d 727] and cases there cited.)

### Plaintiff's Appeal

█ I. *Was the trial court in error in not finding that Federated Investment Company was the alter ego of defendant, and that half of the income of the corporation should have been included in computing defendant's net income?*

The corporation was formed after plaintiff had made demands on defendant for an accounting of his income and the two income-bearing parcels of property previously purchased by defendant through Barman were conveyed to it. The capital stock was issued one-half to defendant and one-half to Barman and his wife. The three directors were defendant, one of defendant's attorneys and a secretary of one of defendant's attorneys. Not until January, 1948, did Barman become an officer. During the period involved in the accounting it is clear that defendant dominated the corporation and his counsel is frank to admit that one of the purposes of the corporation's formation was to minimize defendant's payments to his wife.

As stated in 6A California Jurisprudence, page 75: "It is the law in California as elsewhere that, although a corporation is usually regarded as an entity separate and distinct from its stockholders, both law and equity will, when necessary to circumvent fraud, protect the rights of third persons and accomplish justice, disregard this distinct existence and treat them as identical." The issue is not so much whether, for all purposes, the corporation is the "alter ego" of its stockholders or officers, nor whether the very purpose of the organization of the corporation was to defraud the individual who is now in court complaining, as it is an issue of whether in the particular case presented and for the purposes of such case justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form. (1 Fletcher, Cyc. Corporations, pp. 134, 136, 143 and 165.) The case law of California is in support of this generally recognized view, the cases expressing the doctrine of disregard of the entity in varying language, sometimes rather broad and sometimes more narrow. The leading and most often cited case in California, *Wenban Estate, Inc.* v. *Hewlett*, 193 Cal. 675, 696 [227 P. 723] states it as follows: "While it is the general rule that a corporation is an entity separate and distinct from its stockholders, with separate, distinct liabilities and obligations, nevertheless there is a well-recognized and firmly settled exception to this general rule, that, when necessary to redress fraud, protect the rights of third persons, or prevent a palpable injustice, the law and equity will intervene and cast aside the legal fiction of independent corporate existence, as distinguished from those who hold and own the corporate stock, and deal with the corporation and stockholders as identical entities with identical duties and obligations." In *Continental Securities etc. Co.* v. *Rawson*, 208 Cal. 228, 238 [280 P. 954], after stating the doctrine substantially as it appears above, the court said: "When the corporation is organized or perpetuated for the particular purpose of carrying out the plans of partners or associates in business, the same rule has been held to apply. (Citations.) Whether the corporation be deemed a 'one man' corporation or, as here claimed, a 'two man' corporation, the rule would be the same and the two essential elements must be present." (The significant elements were stated to be (1) control, and (2) a state of facts upon which an adherence to the separate entity would be unjust.) In a recent case, *Katenkamp* v. *Superior Court*, 16 Cal.2d 696, 700 [108 P.2d 1], Justice Traynor expresses the

doctrine thusly: "... while a corporation is usually regarded as an entity separate and distinct from its stockholders, both law and equity will, whenever necessary to circumvent fraud or protect the rights of third persons disregard this distinct existence and treat them as identical." (See, also, *Erkenbrecher* v. *Grant*, 187 Cal. 7, 9-10 [200 P. 641]; *Offeman* v. *Robertson-Cole Studios, Inc.*, 80 Cal.App. 1, 12 [251 P. 830]; *Mills* v. *Richmond Co., Inc.*, 63 Cal.App. 594, 597 [219 P. 465]; *Higgins* v. *California Petroleum etc. Co.*, 147 Cal. 363 [81 P. 1070]; *Puccetti* v. *Girola*, 20 Cal.2d 574, 578 [128 P.2d 13]; *Stark* v. *Coker*, 20 Cal.2d 839, 846 [129 P.2d 390]; *Watson* v. *Commonwealth Ins. Co.*, 8 Cal.2d 61, 68 [63 P.2d 295]; *McCormick-Saeltzer Co.* v. *Grizzly etc. Co.*, 74 Cal.App. 278, 285 [240 P. 32]; *Judelson* v. *American Metal Bearing Co.*, 89 Cal.App.2d 256, 262-3 [200 P.2d 836]; *Hillman* v. *Hillman Land Co.*, 81 Cal.App.2d 174, 183-5 [183 P.2d 730].)

In the instant case there may well have been various business reasons sufficient to justify and support the formation or continuation of the corporation on the part of defendant. For such purposes the Federated Investment Company still stands. The trial court found, in this case, "That counsel for defendant Kent stated in open court as an admission that one of the purposes for the formation of said Federated Investment Company and the transfer of said properties to it was to minimize the alimony payments which the defendant was and is required to pay to plaintiff under said agreement of August 26, 1942." This admission is reiterated in defendant's reply brief. Counsel for defendant argues by analogy to income tax cases that the use of corporate forms to minimize payments is unobjectionable. There is little similarity between tax cases, where the proceedings are in invitum and contract obligations. Defendant entered into an obligation, by the property settlement agreement of 1942, to pay to plaintiff a portion of his income from property. This obligation was entered into voluntarily, solemnly, and with full knowledge and advice of counsel. It may have imposed a duty upon him which he has since regretted and which he now finds most onerous. He nevertheless is bound by the agreement. His duty is to live up to the agreement in letter and spirit. Subterfuges which are designed to circumvent said agreement should not be looked upon with favor by the courts. The essence of the formation of this corporation was to transfer the property of a joint venture to a corporation owned by the

joint adventurers (and the other joint adventurer's wife) and thereby attempt to avoid this solemn obligation, and though the corporate form may be continued, if desired, for other purposes, it will not be recognized by this court for the purpose here in question. The law of this state is that the separate corporate entity will not be honored where to do so would be to defeat the rights and equities of third persons.

II. *Was it error for the trial court to deny plaintiff 30 per cent of the rental value of the Eva Heller Kohn trust's interest in the Hillsborough home, occupied by defendant Kent?*

There is no dispute that plaintiff is entitled to 30 per cent of whatever income from the Eva Heller Kohn trust is paid over to defendant. A certain amount of the corpus of the trust was used (together with a lesser amount of defendant's own money) to purchase a home in Hillsborough. As a result of this transaction, the trust has a two-thirds interest in said property, and defendant has a one-third interest. Permission was obtained by the trustees, from the probate court, to permit defendant to live in the home, rent free, the trust paying two-thirds of the taxes and maintenance of the home. The issue is whether the use of the home, rent free, is not income to defendant, to the extent of two-thirds the rental value thereof.

By paragraph 11(c) plaintiff relinquished her rights to the corpus of the trust, but excepted therefrom "any rights . . . to the income from said trusts after the same is paid (to defendant)." Is the use of the home, rent free, income to defendant? Income is defined by paragraph 5(a) to consist of: "The gross yearly receipts . . . in cash or its equivalent . . .." This definition is not broader than definitions applied in other cases without benefit of a contractual agreement. (42 C.J.S. 528-9; *Schloesser* v. *Schloesser*, 329 Ill.App. 604 [70 N.E.2d 346]; *People* v. *San Francisco Savings Union*, 72 Cal. 199, 203 [13 P. 498] (quoting from *People* v. *Supervisors*, 4 Hill (N.Y.) 20); *Bates* v. *Porter*, 74 Cal. 224, 239 [15 P. 732]; *Yuengling* v. *Comm'r of Internal Revenue*, 69 F.2d 971, 972.) There can be no doubt that rent received by the trust would be income to it. And if paid over to defendant it would be income to him and subject to plaintiff's claim of 30 per cent. There can be no question but that the trust is losing income, for the benefit of defendant, as a result of permitting him to use the home rent free, and that defendant benefits and gains by this arrangement in that he thereby obtains the use of property without expenditure of his own

capital, and without paying for such use of another's property. That defendant is not in receipt of income in the form of cash is clear but, although it is more subtle, it does not seem maintainable that defendant's use of the trust's interest in the home is not income to him. He is in receipt of a valuable tangible asset, namely, the use of the home. He has agreed that he will pay to respondent 30 per cent of his income "in cash or *its equivalent*" as defined in the agreement. In compliance with the agreement, defendant will be compelled to pay to plaintiff 30 per cent of the value of such income, whether "cash or its equivalent," as is received by him.

 III. *Did the trial court err in denying to plaintiff 30 per cent of the realized capital gain upon the sale by defendant of the Marin County property?*

Paragraph 5(a) of the property settlement agreement, in defining "net income," states that capital gains are not to be included "unless such capital gains and profits be reduced to cash or other liquid form, in which latter event, any profit realized by capital sales or conversions, or otherwise, shall constitute income." Paragraph 5(b) exempts the receipt of rents from the Marin County property from net income, upon certain conditions, and paragraph 11(e) relinquishes all claim of plaintiff to the Marin County property itself. Paragraph 11 is designed to settle actual property interests, and there can be no question that plaintiff has released all her right to the property itself. But paragraph 11 does not purport to affect the income provisions of the agreement. The income provisions (par. 5) appear to have the plain meaning that whenever defendant sells *any* property (except that received by gift or devise after the execution of the agreement) which is his own, or to which plaintiff has released all her right, she is entitled to 30 per cent of the gain derived from such sale. The fact that plaintiff has relinquished all of her right, or never had any right in the property sold, simply means that she will not participate in the proceeds of the sale to the extent that the proceeds simply reconstitute the initial capital investment in the property. But to the extent that there is a gain in the sale, plaintiff's interest is governed by the income provisions of the agreement. The fact that plaintiff has no right to the rent from the property has no bearing upon the problem, unless it indicates a proper case for the application of the doctrine *expressio unius est exclusio alterius*; that the express release of income from rent indicates a reservation of

the unreleased income from capital gain. This is simply a problem of construing a contract, and it seems clear that defendant is bound by the provision in paragraph 5(a) to pay to plaintiff 30 per cent of any realized capital gain.

Whether or not there was any capital gain from the sale of the Marin County property was not determined and we express no opinion thereon. That will present a question of fact for the trial court. The court was in error in finding that plaintiff is not entitled to 30 per cent of the net income, if any, from the sale of the Marin County property and in expressly refusing to find ''whether or not any net income was made . . . in the sale of said Marin County property . . ..''

The judgment is reversed insofar as it failed to adjudicate plaintiff's right to receive 30 per cent of 1. defendant's one-half interest in any undistributed income of Federated Investment Company; 2. the reasonable rental value of the undivided two-thirds interest of the Eva Heller Kohn trust in the Hillsborough home occupied by defendant and 3. the capital gains, if any, from the sale by defendant of the Marin County properties; in all other particulars the judgment is affirmed. Plaintiff to recover costs on both appeals.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied February 25, 1950, and appellant's petition for a hearing by the Supreme Court was denied March 23, 1950. Schauer, J., voted for a hearing.